UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTEL, INC., <br><br> Plaintiff, <br><br> -against- <br><br> ANIMEFUNSTORE, ET AL., <br><br> Defendants. | 18 Civ. 8824 (LAP) <br><br> OPINION & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is a motion to dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(2)(for lack of personal jurisdiction) and 12(b)(5)(for insufficient service of process) by Defendants Animefun Store, Bingo 1993, Bingoes Hot Toy Factory, Miliy Store, and Q374428329 (collectively, "the Wang Defendants").[1] (See Wang Defendants' Mem. of Law in Support of Motion to Dismiss ("Motion"), dated Oct. 13, 2019 [dkt. no. 69]; see also Plaintiff's Mem. of Law in Opposition to Motion to Dismiss ("Opp."), dated

---

[1] Plaintiff employed the same nomenclature for this consortium of defendants in its opposition papers, and the Court adopts it here for the sake of clarity and continuity.  The Wang Defendants are ostensibly referred to as such because they were previously represented by an attorney named Xuanye Wang, who withdrew from this case after those Defendants retained new counsel. (See Xuanye Wang's Motion to Withdraw, dated May 20, 2019 [dkt. no. 60]; Order Conditionally Granting Withdrawal, dated October 16, 2019 [dkt. no. 70].)

1

November 15, 2019 [dkt. no. 77].)[2] For the reasons discussed below, the Wang Defendants' motion to dismiss is DENIED.

FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff Mattel, Inc. ("Plaintiff" or "Mattel") is a widely known designer, developer, marketer, manufacturer, and distributor of various children's toys and games. (See Complaint ("Compl."), dated September 26, 2018 [dkt. no. 15] at ¶ 58.)  Hundreds of millions of consumers know Mattel as the proprietor of world-famous toy brands such as Barbie, Hot Wheels, Fisher-Price, and American Girl.  (Id.)  One of Mattel's most popular brands is UNO, a card game where players begin with seven cards and can win the game by successfully discarding all of the cards in their hand. (Id. ¶ 60.)  The game is named as such because players with one card remaining in their hand are required to exclaim "Uno!" to other players or otherwise face a penalty.  (Id.)

UNO is one of the most popular card games in the United States.  (Id. ¶ 63.)  Beyond undertaking extensive marketing efforts to promote the UNO brand, Plaintiff has taken steps to

---

[2] The Court considers the briefing on the present motion complete notwithstanding the fact that Wang Defendants neglected to file reply papers in response to Plaintiff's November 15, 2019 opposition.  Both the Federal Rules of Civil Procedure and the Local Rules for the Southern District of New York require that any reply memoranda be served within seven days after service of Plaintiff's response papers.  See Fed. R. Civ. P. 27(a)(4); S.D.N.Y. Local R. 6.1(b)(3).  By failing either to file their reply papers or to request an extension to do so within the allotted time, Defendants waived their right a reply.

protect its intellectual property rights associated with its UNO-related products.  For example, Mattel is the owner of U.S. Trademark Registration No. 1,005,397 for "UNO" for goods in Class 28 and U.S. Trademark Registration Nos. 5,125,593 and 2,008,897 for the wordmark "UNO" in Classes 9 and 28.  (Id. ¶ 65, Ex. A). Mattel is also the owner of both registered and unregistered copyrights in and related to various iterations of its UNO products.  (Id. ¶¶ 68-69).

On September 26, 2018 Mattel initiated the present action against the Wang Defendants, as well as numerous others.  (See generally Compl.)[3]  The Wang Defendants are China-based businesses who allegedly maintain and use merchant accounts on e-commerce sites such as Alibaba.com, AliExpress.com, and DHgate.com to sell merchandise to customers located in the United States.  (Id.) Mattel's complaint alleges a menagerie of claims all of which center around the Wang Defendants' alleged use of those online marketplaces in connection with their alleged "manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling" of

---

[3] In fact, the Wang Defendants represent only a small fraction of the defendants named in Plaintiff's Complaint, who are over 50 in number.  (See Compl. ¶¶ 5-57.)  None of the remaining defendants has answered or otherwise responded to Mattel's complaint, and Plaintiff has accordingly indicated that it will seek a default judgment against them.  (See Request to Extend Discovery, dated October 17, 2019 [dkt. no. 72].)

counterfeit UNO products.  (See Compl. ¶ 86.)[4] Of relevant note, Mattel's complaint alleges that the Defendants, including the Wang Defendants, utilized their online marketplace accounts to transact business with consumers located in the United States, including New York, (Compl. ¶ 2(e)), and offered shipping to customers in the United States, including to New York, (id. ¶ 2(d)).[5]

Shortly after it initiated this lawsuit, Mattel also moved ex parte against all Defendants for (1) a temporary restraining order; (2) an order restraining assets and Defendants' merchant storefronts; (3) an order to show cause why a preliminary injunction should not be issued; (4) an order authorizing

---

[4] Specifically, Plaintiff raises the following claims against defendants:

  (1) Trademark infringement in violation of Section 32 of the Lanham Act. 15 U.S.C. § 1051;
  (2) Counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c);
  (3) False designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §125(a));
  (4) Copyright infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976, 12 U.S.C. §§;
  (5) And related state and common law claims.

See Compl. ¶¶ 103-162.

[5] Mattel employed a company called New Alchemy Limited ("NAL") to investigate the Defendants' alleged marketing and sale of counterfeit products on their digital storefronts. (Compl. ¶ 85.) According to Mattel, "NAL confirmed that each Defendant was and/or is still currently offering for sale" counterfeit products to consumers located in New York. (Id. ¶ 90.)

4

alternative means of service; and (5) an order authorizing expedited discovery.  (See Motion at 2 (citing dkt. nos. 21-24).) On October 4, 2018, this Court granted Plaintiff's application, and specifically authorized alternative service by electronic mail.  (See Temporary Restraining Order ("TRO"), dated October 4, 2019 [dkt. no. 11]).  In specific part, the TRO allowed service through:

> (1) delivery of: (i) PDF copies of the TRO together with the Summons and Complaint, and (ii) a link to a secure website (including Dropbox.com, NutStore.com, a large mail link created through RPost.com and via website publication through a specific page dedicated to his Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of the TRO together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking the TRO to Defendants' email-addresses, as identified in Schedule A or may otherwise be determined; or (2) delivery of a message to Defendants through the same means that Plaintiff's agents have previously communicated with Defendants, namely the system for communications established by the Third Party Service Providers on their respective platforms, notifying Defendants that an action has been filed against them in this Court and providing a link to a secure website (such as Dropbox.com, NutStore.com or a large mail link created through RPost.com) where each Defendant will be able to download PDF copies of the TRO together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking the TRO.

(See TRO ¶¶ IV(A)(1)-(2)(underlines added for clarity).)  Mattel served each Defendant with the Summons, Complaint, TRO, and all documents filed in support of the TRO application on October 11, 2018, and filed a Certificate of Service confirming service on October 22, 2018.  (See Certificate of Service, dated October 22, 2018 [dkt. no. 14].)

5

The Wang Defendants first answered Mattel's complaint on March 19, 2019.  Shortly thereafter, the Wang Defendants filed an Amended Answer on April 1, 2019.  (See Amended Answer ("Ans."), dated April 1, 2019 [dkt. no. 48].)  In that Answer, Defendants asserted a number of affirmative defenses, among them this Court's purported lack of personal jurisdiction and improper service of process.  (Ans. ¶¶ 163-187.)

## DISCUSSION

In the instant motion, the Wang Defendants argue that Mattel's complaint must be dismissed for two reasons.  First, the Wang Defendants contend that this Court lacks personal jurisdiction over them because they do not have sufficient contacts with New York and, in any case, because the exercise of personal jurisdiction would not be reasonable.  (Motion at 2.)  Second, the Wang Defendants assert that Plaintiff's service by email runs afoul of Federal Rule of Civil Procedure 4(f).  For the reasons detailed below, both contentions are unavailing.

    a. The Wang Defendants Have Forfeited the Defense of Lack of Personal Jurisdiction

In Miguel de Cervantes' magnum opus, Don Quixote, the titular Don astutely opines that "in delay lurks danger."  This principle unquestionably applies to raising the defense of lack of personal jurisdiction. It is hornbook law that "lack of personal jurisdiction is a privileged defense that can be forfeited, in

6

part, 'by [a] failure to assert it seasonably.'" Sims v. Mme. Paulette Dry Cleaners, 638 F.Supp. 224, 227 (S.D.N.Y. 1986)(citing Neirbo Co. v. Bethlehem Corp., 308 U.S. 165, 168 (1939)). Such forfeiture may occur even where a defendant has asserted the defense of lack of personal jurisdiction in an answer in accordance with Federal Rule of Civil Procedure 12(h)(1).  See Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 60 (2d Cir. 1999) ("Rule 12(h)(1) specifies the minimum steps that a party must take in order to preserve a defense.") (quoting Peterson v. Highland Music, Inc., 140 F.3d 1313, 1318 (9th Cir.1998)). Accordingly, "literal[] compli[ance] with Rule 12(h)(1)" cannot "preserve a defense in perpetuity," Burton v. Northern, 106 F.R.D. 477, 481 (S.D.N.Y. 1985), and litigants who "delay in challenging personal jurisdiction" risk "the forfeiture of a personal jurisdiction defense," Allgaier v. Peterson, No. 13 Civ. 5112(VB), 2015 WL 5459808, at *3 (S.D.N.Y. Aug. 13, 2015) (citing Hamilton, 197 F.3d at 60).

There is no bright-line rule that establishes conclusively the length of delay that is sufficient to cause a forfeiture, though this Court has noted that forfeiture "is more appropriate in cases in which [a] defense is not raised for months or even years." Hack v. Stang, No. 13 Civ. 5713(AJN), 2014 WL 4652596, at *3 (S.D.N.Y. Sept. 18, 2014). In general, however, whether a delay justifies a finding of forfeiture hinges on "the defendant's delay

in bringing the motion, the extent of pretrial activity that has taken place, and the opportunities that existed to assert the motion." Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc., No. 00 Civ. 0201(JSM), 2001 WL 1041990 (S.D.N.Y. Sept. 7, 2001)(citations omitted).  Thus, for example, in Datskow v. Taledyne, the Court of Appeals found that a defendant had forfeited the defense of lack of personal jurisdiction due to improper service by participating in the litigation without raising the defense until four months after raising the issue in its answer. 899 F.2d 1298, 1302-03 (2d Cir. 1990).[6]  At the extreme end of the spectrum, the Court of Appeals in Hamilton v. Atlas Turner found that a defendant had forfeited a personal jurisdiction defense where there was a delay of four years between the assertion of lack of personal jurisdiction in the answer and the filing of the motion to dismiss, and where defendant had "participat[ed] in extensive pretrial proceedings" before filing.  See 197 F.3d at 59, 61.

Here, the Court concludes that the Wang Defendants have forfeited that defense by virtue of their delay in filing the

---

[6] The Court is cognizant of the Court of Appeals' warning in Datskow that courts should be "slower to find waiver" where a defendant is contesting personal jurisdiction "on the ground that longarm jurisdiction is not available," as the Wang Defendants do here. See 899 F.2d at 1303.  Any concern that the Court would have with that conclusion, however, is mollified by the Court's alternate conclusion that, notwithstanding the finding of forfeiture, personal jurisdiction exists on the merits.  See infra at 10 n.7.

eventual motion to dismiss and their active participation in the litigation.  In relevant part: the Wang Defendants answered Plaintiff's complaint on March 19, 2019, asserting the lack of personal jurisdiction as an affirmative defense (Ans. ¶¶ 163-68), but did not actively contest personal jurisdiction until they filed their motion to dismiss seven months later on October 13, 2019, (Motion at 2-4).  More critically, in the intervening time the Wang Defendants engaged in significant pretrial activity without so much as mentioning their objection to the Court's exercise of personal jurisdiction.  Among other things, they: submitted a Rule 26(f) Plan, (see dkt. no. 50), filed a motion to compel discovery, (see dkt. no. 53), attended a pretrial conference, (see dkt. no. 55), sought extensions of discovery deadlines, (see dkt. no. 62), exchanged merits discovery, (Motion at 4), scheduled party depositions, (id.), and engaged in settlement discussions with Plaintiff, (id.).  Indeed, according to Plaintiff, the Wang Defendants have been actively engaged in settlement discussions with Plaintiff's counsel since as early as October 2018.  (Opp. at 4 n.2.)  This extensive pretrial activity is, in the Court's eyes, more than enough to "give [Plaintiff] a reasonable expectation" that the Wang Defendants would "defend [Plaintiff's] suit on the merits" in the present forum.  See Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción, 832 F.3d 92, 102 (2d Cir. 2016) (quoting Mobile

9

Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A., 623 F.3d 440, 443 (7th Cir. 2010)).[7] Consequently, the Wang Defendants have forfeited their defense of lack of personal jurisdiction.

---

[7] Even assuming arguendo that the Wang Defendants did not forfeit their personal jurisdiction defense, the Court would have no trouble concluding that it possesses personal jurisdiction over the Wang Defendants on the merits. Here, the work of Plaintiff's investigator confirms that the Wang Defendants offered counterfeit goods for sale in New York and provided for shipping to New York, (Opp. at 7-8), a fact that the Court of Appeals has noted is "sufficient," even in the absence of any resulting sales, to provide for personal jurisdiction over the alleged infringer under N.Y. CPLR Section 302(a), i.e., the New York long-arm statute. Cartier v. Seah LLC, 598 F. Supp.2d 422, 425 (S.D.N.Y. 2009); see also Audiovox Corp. v. S. China Enter., Inc., No. 11 Civ. 5142 (JS)(GRB), (S.D.N.Y. Jul. 26, 2012)("[I]f a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction.").
   Accordingly, and as Plaintiff points out in a lengthy string cite that may belong in the Guinness Book of World Records, courts in this District have routinely found personal jurisdiction over China-based defendants who operate storefronts on online marketplaces such as Amazon or Alibaba. See, e.g., Spin Master Ltd. and Spin Master, Inc. v. 18699055609@163.com, et al., No. 19-cv-6950-VM, Dkt. 19 (S.D.N.Y. Jul. 25, 2019); Spin Master Ltd. and Spin Master, Inc. v. ACIPER, et al., No. 19-cv-6949-VSB, Dkt. 19 (S.D.N.Y. Jul. 25, 2019); Ideavillage Products Corp. v. 60676, et al., No. 19-cv-6478-ER, Dkt. 18. (S.D.N.Y. Jul. 12, 2019); Ideavillage Products Corp. v. ACCECITY2018 STORE, et al., No. 19-cv-6476-ER, Dkt. 19 (S.D.N.Y. Jul. 12, 2019). Based on the record before it which demonstrates that the Wang Defendants are similarly-situated to the defendants in those cases, the Court sees no reason to depart from that settled practice. If the Wang Defendants "wish[] to operate an interactive website accessible in New York, there is no inequity in subjecting [them] to personal jurisdiction here." Thomas Publ'g Co. v. Indus. Quick Search, 237 F. Supp.2d 489, 492 (S.D.N.Y. 2002).

### b. Service of Process by Alternative Means on the Wang Defendants was Proper

The Wang Defendants argue that service by email, as authorized by the Court in the TRO, was in contravention of the Hague Convention (to which the United States and China are both signatories), New York law, the Federal Rules of Civil Procedure, and their right to due process under the United States Constitution. (Opp. at 5-14.) Each of these arguments is unavailing.

The Court determined that service of the Wang Defendants by email would be appropriate when it issued the October 19, 2018 Temporary Restraining Order. (See TRO ¶ IV(A)(2); see also supra at 5 (quoting portion of TRO authorizing alternative means of service).) As Mattel explains in its opposition papers, alternative service was specifically appropriate here because "third-party merchants on DHgate, Alibaba and AliExpress, like the Wang Defendants, have been known to use aliases, false addresses and other incomplete identifying information to shield their true identities and there were, in fact, only partial, incomplete or no physical addresses whatsoever associated with the majority of the Wang Defendants' User Accounts." (See Opp. at 10.) Plaintiff accordingly used RPost's registered mail services in serving the Wang Defendants by email. (Opp. at 3.)

11

Fed. R. Civ. P. 4(f) provides that individuals in foreign countries--such as the Wang Defendants--may be served (1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention"; (2) "by a method that is reasonably calculated to give notice," including "as the foreign authority directs in response to a letter rogatory or letter of request"; and (3) "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f).  Fed. R. Civ. P. 4(h) confirms that service of process on foreign corporations may be made using the same methods outlined in 4(f)(1) and 4(f)(3), among other provisions.  See Fed. R. Civ. P. 4(h).

Allowance of alternative means of service pursuant to Fed. R. Civ. P. 4(f)(3) is permissible so long as it "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." SEC v. Anticevic, No. 05 CV 6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009).[8]  On the first

---

[8] Notably, "[s]ervice of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant." Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002).  Thus, the rule does not require a party to serve process by the means specified in subsection 4(f)(1) and (f)(2) before a court permits alternative service by "other means" under Rule 4(f)(3).  See Advanced Aerofoil Techs., AG v. Todaro, 2012 WL 299959 (S.D.N.Y. Jan. 31, 2012) ("there is no hierarchy among the subsections in Rule 4(f)"); Sec. & Exch. Comm'n

(Footnote Continues on Following Page)

score, this Court has held that China's objection to service by postal channels under Article 10 of the Hague Convention does not encompass service by email and that, further, service by email is not prohibited by any international agreement.  See Sulzer Mixpac AG v. Medenstar Indus. Co., 312 F.R.D. 329, 339 (S.D.N.Y. 2015.)

On the second score, meeting the strictures of the Due Process Clause requires only that the alternative means of service be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950).  That bar is clearly met here, as the Wang Defendants engaged in online business and regularly communicated with customers through email. (Affirmation of Danielle S. Yamali ("Yamali Aff."), dated Nov. 15, 2019 [dkt. no. 78] at 3.)  Cf.  Sulzer Mixpac AG, 312 F.R.D. at 332 (noting that service through email was appropriate where the "email address in question is listed prominently on [defendant's internet homepage...[,] [the defendant] presumably relies at least partially on contact through [its email] to conduct overseas business, and it is reasonable to expect [defendant] to learn of

---

v. Anticevic, 2009 WL 361739 (S.D.N.Y Feb. 13, 2009) ("A Plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)").  Rule 4(f)(3) "stands independently, on equal footing" with subsection (f)(1) or (f)(2).  Rio Props., Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002).

the suit against it through this email address."). Moreover, service by email was indubitably effective in this case. After sending the Summons, Complaint, TRO and all other relevant documents to the Wang Defendants via email, Mattel received registered receipts from RPost confirming that the service emails and documents annexed thereto were sent to, delivered to and received by each and every one of the Wang Defendants. (Opp. at 3.)  On top of that, after service of the relevant documents, counsel for the Wang Defendants contacted Plaintiff's office identifying his representation and confirmed the Wang Defendants' knowledge of this action.  Counsel of the Wang Defendants thereafter engaged in settlement discussions and actively participated in the discovery process. (Yamali Aff. at 4.)  It can thus hardly be said that service by email failed to apprise the Wang Defendants of the initiation of this litigation and to provide them with an opportunity to register their objections to it.  Mullane, 339 U.S. at 309.  Accordingly, the Court concludes that service to the defendants' email addresses "comport[s] with constitutional notions of due process." Rio Props., 284 F.3d at 1015.

## CONCLUSION

For the foregoing reasons, the Wang Defendants' Motion to Dismiss (dkt. no. 69) is denied in its entirety. The parties shall

14

confer and inform the Court by letter no later than May 15, 2020, how they wish to proceed.

**SO ORDERED.**

Dated:   New York, New York
         May 1, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge