UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MATTEL, INC.,

                    Plaintiff,

-against-

ANIMEFUNSTORE, et al.,

                    Defendants.

---

18 Civ. 8824 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Plaintiff Mattel, Inc. ("Mattel")'s

motion for summary judgement against Defendants AnimeFun Store,

Bingo 1993, Bingoes Hot Toy Factory, Miliy Store, and Q374428329

("Wang Defendants"[1]).[2]  The Wang Defendants, merchant storefronts

on AliExpress.com and/or DHgate.com accused of selling

---

[1] The Court adopts this defined term, which ostensibly references
attorney Xuanye Wang's prior representation of this defendant
cohort, from the parties' briefing.

[2] (See Plaintiff's Notice of Motion for Summary Judgment, dated
July 31, 2020 [dkt. no. 87]; see also Plaintiff's Memorandum of
Law in Support of its Motion for Summary Judgment ("Mot."),
dated July 31, 2020 [dkt. no. 88].)  The Court considers the
briefing on the motion complete notwithstanding Plaintiff's
failure to file reply papers in response to the Wang Defendants'
August 15, 2020 opposition.  Both the Federal Rules of Civil
Procedure and the Local Rules for the Southern District of New
York require that any reply memoranda be served within seven
days of service of the response papers.  See Fed. R. Civ. P.
27(a)(4); S.D.N.Y. Local R. 6.1(b)(3).  Plaintiff waived its
right to reply by failing to file reply papers within the
designated timeframe.

counterfeit versions of Plaintiff's merchandise, oppose the motion.[3]

For the reasons stated below, summary judgment is <u>GRANTED</u> in part and <u>DENIED</u> in part.

## I.   <u>Background</u>

"Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York . . . requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact." <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003). The non-moving party's responsive statement must "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts."  Local Civ. R. 56.1(b).  Each statement in the response "must be followed by citation to evidence which would be admissible."  <u>Id.</u> 56.1(d). If the non-moving party "fails to submit a responsive statement, then the facts set forth in the moving party's 56.1 statement

---

[3] (<u>See</u> Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law ("Opp."), dated Aug. 15, 2020 [dkt. no. 94].)

are deemed admitted." Truitt v. Salisbury Bank & Tr. Co., No.
18-CV-8386 (NSR), 2020 WL 4208452, at *1 (S.D.N.Y. July 21,
2020).

Defendants' Rule 56.1 Counterstatement suffers from two
categories of deficiencies.  First, Defendants cite to no
affidavits, exhibits, or evidence in their Rule 56.1
Counterstatement, including where they dispute a contention that
Plaintiff offers in its Rule 56.1 Statement.  Defendants instead
respond with a number of conclusory denials deprived of
citations to admissible evidence.  (See, e.g., Wang Defendants'
Local Civil Rule 56.1 Counterstatement of Material Facts
("Defs.' Counter 56.1"), dated Aug. 14, 2020 [dkt. no. 93],
¶ 47.)  Because Defendants have failed to cite any evidence to
support their denials of certain portions of Plaintiff's Rule
56.1 Statement, the facts in Plaintiff's statement are admitted
in those instances to the extent they are supported by the
record.  See Maynard v. Montefiore Med. Ctr., No. 18-CV-8877
(LAP), 2021 WL 396700, at *1 (S.D.N.Y. Feb. 4, 2021) (finding
that facts set forth in movant's Local Rule 56.1 statement were
admitted where non-movant offered denials "without any citations
to admissible evidence").

Second, in some instances, Defendants assert that they
cannot offer facts in support of their denials because they have
not been able to obtain discovery from the third-party suppliers

from whom they purchased the allegedly counterfeit products. (See, e.g., Defs.' Counter 56.1 ¶ 48 ("Through visual inspection of the Wang Defendants' Infringing Listings, NAL confirmed that each of the Wang Defendants was using the UNO Marks without authorization and that the products that each Defendant was offering for sale using virtually identical copies of the UNO Marks were, in fact, Counterfeit Products.  Wang Defendants' Response: Disputed.  Defendant[s] [are] not currently able to present further facts in opposition because [they have] yet to complete discovery of documents and information relevant to the authenticity of the supplier who Defendant[s] purchased the products from."); ¶¶ 70, 71 ("Wang Defendants' Response: Disputed.  Defendant[s] purchased the products from Chinese suppliers, if the products are deemed to be counterfeit, Defendant[s] [have been] defrauded by the Chinese suppliers. Defendant[s] [are] not currently able to present further facts in opposition because [they have] yet to complete discovery of documents and information relevant to the authenticity of the supplier who Defendant[s] purchased the products from.")

Federal Rules of Civil Procedure Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it . . . ."  Fed. R. Civ. P. 56(d).  "Rule 56(d)

expressly requires the nonmoving party who seeks further discovery in these circumstances to make a 'show[ing] by affidavit or declaration' of the reasons for needing the relief." Kazolias v. IBEW LU 363, 806 F.3d 45, 54 (2d Cir. 2015).  The affidavit or declaration must "show[ ] (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 303 (2d Cir. 2003) (internal quotation marks omitted).

As an initial matter, Defendants have not filed an affidavit or declaration explaining why they were unable to obtain this discovery by now[4] or why it would make any difference.  This failure alone "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." 1077 Madison St., LLC v. Daniels, 954 F.3d 460, 464 (2d Cir. 2020) (citing Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)).

---

[4] The Court ordered the parties to complete fact discovery no later than September 10, 2019 (Order, dated May 2, 2019 [dkt. no. 59]), and twice extended the fact discovery deadline.  (See Order, dated Sept. 6, 2019 [dkt. no. 63] (extending fact discovery deadline to October 18, 2019); Order, dated Oct. 28, 2019 [dkt. no. 76] (extending fact discovery deadline to January 10, 2020).)

Moreover, Defendants' raising of the need for additional discovery for the first time while opposing a motion for summary judgment is plainly improper.  See, e.g., Alzawahra v. Albany Med. Ctr., 546 F. App'x 53, 55 (2d Cir. 2013) (summary order) (declining to rule on discovery disputes raised for the first time in opposition to summary judgment motion).  Moreover, "[a] party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient." Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 151 (2d Cir. 2016) (internal quotation marks omitted); see also In re Dana Corp., 574 F.3d 129, 148-49 (2d Cir. 2009) ("A court plainly has discretion to reject a request for discovery if the evidence sought would be cumulative or if the request is based only on speculation as to what potentially could be discovered.") (internal quotation marks omitted).  Defendants have made little attempt to show, for example, what information in the hands of these third-party suppliers would be relevant to the instant motion "if the products are deemed to be counterfeit."  (See Defs.' Counter 56.1 ¶¶ 70, 71.)  Defendants contend that "it is possible" that additional evidence could show that they

6

purchased products from suppliers affiliated with Mattel's lone-authorized Chinese vendor, (Opp. at 3); however, Defendants cite to nothing in their attempt to oppose the record evidence offered by Mattel showing that Defendants purchased their UNO products from a vendor that was not authorized by Mattel and that inspection of these products revealed that they were not Mattel manufactured or authorized products.

Accordingly, the Court will not defer consideration of Plaintiff's motion for summary judgment on this basis, see, e.g., Crescent Beach Club LLC v. Indian Harbor Insurance Co., 468 F. Supp. 3d 515, 536 (E.D.N.Y. 2020), and will treat Defendants' denials on the basis that they require additional discovery as admissions of "facts set forth in [Plaintiff's] 56.1 Statement, to the extent they are supported by the record," Truitt, 2020 WL 4208452, at *1.

### a. Facts

Mattel is a leading designer, developer, marketer, manufacturer, and distributor of products sold under well-known brand names, including Barbie, Hot Wheels, American Girl, and Fisher-Price. (See Plaintiff's Local Rule 56.1 Statement ("Pl.'s 56.1"), dated July 3, 2020 [dkt. no. 89], ¶ 25; Declaration of Ray Adler in Support of Plaintiff's Application for a Temporary Restraining Order ("Adler Decl."), dated Sept. 21, 2018 [dkt. no. 23], ¶ 3.) Plaintiff sells its Mattel

products worldwide through major retailers, toys stores, and online marketplaces.  (Pl.'s 56.1 ¶ 26; Adler Decl. ¶ 4.)

One of Mattel's most popular and successful products is UNO. (Pl.'s 56.1 ¶ 27; Adler Decl. ¶ 5.)  UNO is a card game wherein players begin with seven cards and, through each turn, attempt to match a card in their hands with a card on the deck or be forced to draw an additional card.  (Pl.'s 56.1 ¶ 28; Adler Decl. ¶ 5.)  Players attempt to be the first to discard successfully all of their cards.  (Pl.'s 56.1 ¶ 28; Adler Decl. ¶ 5.)  When a player has a single card remaining, he or she must announce "Uno!" to the other players, providing a warning that the game is nearly complete, or risks a penalty.  (Pl.'s 56.1 ¶ 28; Adler Decl. ¶ 5.)

Mattel has filed for and obtained federal trademark registrations for UNO.  (Pl.'s 56.1 ¶ 30; Declaration of Ray Adler in Support of Plaintiff's Motion for Summary Judgment ("Adler Decl. II"), dated July 30, 2020 [dkt. no. 90], ¶ 9.) Mattel is the owner of the UNO Registrations covering the UNO marks, including U.S. Trademark Registration Nos. 1,005,397 for "UNO" for goods in Class 28 and 5,125,593 for the wordmark "UNO" in Class 9.  (Pl.'s 56.1 ¶ 31; Adler Decl. II ¶ 10; Ex. A to Adler Decl. II [dkt. no. 90-1].)  Plaintiff has spent substantial time, money, and effort in building up and developing consumer recognition, awareness, and goodwill in its

UNO products and UNO marks.  (Pl.'s 56.1 ¶ 35; Adler Decl. II ¶ 13.)

As of September 2018, approximately 90% of Mattel's single basic UNO products available to consumers in the U.S. were manufactured in the U.S., while the remaining 10% were manufactured and sold by a single vendor, directly to retailers. (Pl.'s 56.1 ¶ 38; Adler Decl. II ¶ 16.)  No one other than Plaintiff and its authorized licensees and distributors is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the UNO marks without the express permission of Plaintiff.  (Pl.'s 56.1 ¶ 42.)  The Wang Defendants are not and have never been authorized by Mattel and/or Mattel's licensees to sell UNO products and/or use the UNO marks.  (Adler Decl. II ¶ 20.)

The Wang Defendants are individuals or businesses located in China that conduct business in the U.S. and other countries via online storefronts on AliExpress.com or DHgate.com.  (Pl.'s 56.1 ¶ 2; see also Declaration of Wenbin Jin ("Jin Decl."), dated Apr. 1, 2019 [dkt. no. 51-1]; Declaration of Minghui Lai ("Lai Decl."), dated Apr. 1, 2019 [dkt. no. 51-3]; Declaration of Xiaoyan Shi ("Shi Decl."), dated Apr. 1, 2019 [dkt. no. 51-5]; Declaration of Xiaogang Wang ("Wang Decl."), dated Apr. 1,

2019 [dkt. no. 51-7].)[5]  Each of the Wang Defendants sold
merchandise purporting to be UNO products through its online
storefront.[6]  The Defendants purchased these products from
suppliers in China.  (Pl.'s 56.1 ¶¶ 6, 13, 18, 23.)  None of the
Wang Defendants' operators could tell the difference between the
UNO products he or she purchased from vendors in China and the
legitimate UNO products offered for sale or sold by Plaintiff.
(Pl.'s 56.1 ¶¶ 7, 14, 19, 24; see also Jin Decl. ¶ 23; Lai Decl.
¶ 24; Shi Decl. ¶ 24; Wang Decl. ¶ 23.)

---

[5] Defendant AnimeFun Store, operated by Minghui Lai, is a
merchant on Aliexpress.com with a principal place of business
located in Guangdong, China.  (Pl.'s 56.1 ¶¶ 3-4).  Defendant
Bingo1993, operated by Xiogang Wang, is a merchant on Dhgate.com
with a principal place of business located in Zhejiang, China.
(Pl.'s 56.1 ¶¶ 8, 10.)  Defendant Q374428329, also operated by
Xiogang Wang, is a merchant on Dhgate.com with a principal place
of business located in Zhejiang, China.  (Pl.'s 56.1 ¶¶ 9-10.)
Defendant Bingoes Hot Toy Factory, operated by Wenbin Jin, is a
merchant on Aliexpress.com with a principal place of business
located in China.  (Pl.'s 56.1 ¶¶ 15-16.)  Defendant Miliy
Store, operated by Xiaoyan Shi, is a merchant on Aliexpress.com
with a principal place of business located in China.  (Pl.'s
56.1 ¶¶ 20-21.)

[6] Defendant AnimeFun Store engaged in 205 transactions of "UNO-
related" products, including four transactions involving
consumers in New York.  (Pl.'s 56.1 ¶5.)  Defendant Bingo1993
engaged in one "UNO-related" transaction.  (Pl.'s 56.1 ¶ 11.)
Defendant Q374428329 engaged in eight transactions of "UNO-
related" products.  (Pl.'s 56.1 ¶ 12.)  Defendant Bingoes Hot
Toy Factory engaged in 1,760 transactions of "UNO-related"
products, including two involving consumers in New York.  (Pl.'s
56.1 ¶ 17.)  Defendant Miliy Store engaged in 15 transactions of
"UNO-related" products, including one "UNO-related" product sold
to consumers in New York.  (Pl.'s 56.1 ¶ 22.)

10

Counsel for Mattel, Epstein Drangel LLP, retained NAL, a
company that provides trademark infringement research services,
to investigate and research online merchants offering for sale
products that could infringe on the UNO marks.  (Pl.'s 56.1
¶¶ 43-44; Declaration of Jessica Arnaiz in Support of
Plaintiff's Application for a Temporary Restraining Order
("Arnaiz Decl."), dated Sept. 21, 2018 [dkt. no. 22], ¶¶ 3-4.)
During NAL's investigation, it identified the Wang Defendants as
offering for sale and/or selling counterfeit products through
their respective merchant storefronts on AliExpress and DHgate.
(Id. at ¶ 6, Ex. A; Pl.'s 56.1 ¶ 47.)  Through visual inspection
of the Wang Defendants' infringing listings, NAL confirmed that
each of the Wang Defendants was using the UNO marks without
authorization and that the products that each Defendant was
offering for sale using virtually identical copies of the UNO
marks were, in fact, counterfeit products.  (Pl.'s 56.1 ¶ 48;
Arnaiz Decl. ¶ 7.)  NAL contacted each of the Wang Defendants
through its respective merchant storefront on the online
marketplace platforms AliExpress.com and DHgate.com, expressed
interest in placing a bulk order for the counterfeit products,
and confirmed that each sold products to customers in the United
States.  (Pl.'s 56.1 ¶¶ 49-55; see also Arnaiz Decl. ¶ 8.)
Moreover, through visual inspection of the Wang Defendants'
infringing listings, Plaintiff and Plaintiff's counsel confirmed

11

that each of the Wang Defendants was using the UNO marks without authorization and that the products that each of the Wang Defendants was offering for sale using virtually identical copies of the UNO marks were, in fact, counterfeit products. (Pl.'s 56.1 ¶ 58; see also Declaration of Spencer Wolgang in Support of Plaintiff's Application for a Temporary Restraining Order, dated Sept. 26, 2018 [dkt. no. 24], ¶¶ 18-19, Ex. A.) Plaintiff's inspection of the infringing listings for UNO-related products revealed these UNO-marked products had below-market pricing, improper or no packaging, incorrect labeling, and wrong coloring.  (Pl.'s 56.1 ¶ 62; Adler Decl. ¶ 27.)

Mattel has a single third-party vendor source in China.[7] (Pl.'s 56.1 ¶ 61; Adler Decl. II ¶ 18.)  Mattel has confirmed that all of the Wang Defendants are not, nor have they ever been, authorized distributors or licensees of the UNO products. (Pl.'s 56.1 ¶ 59; Adler Decl. II ¶ 20.)  Nor are the suppliers identified on the Wang Defendants' invoices authorized or licensed by Mattel to manufacture and/or sell UNO products. (Adler Decl. II ¶ 19.)  Neither has Mattel consented to the Wang

_____

[7] Although Plaintiff asserts that this supplier "has confirmed that none of the suppliers that issued invoices to the Wang Defendants are associated with said vendor," Pl.'s 56.1 ¶ 61, this statement is hearsay and thus cannot be relied upon for the instant motion.  See Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009).

Defendants' use of the UNO marks nor consented to their use of any identical or confusingly similar marks.  (Pl.'s 56.1 ¶ 60; Adler Dec. ¶ 26.)

### b. Procedural History

Mattel initiated this action against the Wang Defendants and numerous other online merchants, asserting claims for (1) trademark counterfeiting and infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b); (2) false designation of origin, passing off, and unfair competition in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a); (3) copyright infringement in violation of 17 U.S.C. § 501(a); and (4) state and common law claims, including (i) deceptive acts in violation of N.Y. Gen. Bus. Law § 349; (ii) false advertising in violation of N.Y. Gen. Bus. Law § 350; (iii) unfair competition; and (iv) unjust enrichment.  (Complaint ("Compl."), dated Sept. 26, 2018 [dkt. no. 15], at 26-38.)

Upon Plaintiff's application, the Court granted a motion for a temporary restraining order.  (Temporary Restraining Order, dated Oct. 4, 2018 [dkt. no. 11].)  After Defendants failed to appear at a show-cause hearing on October 18, 2018, the Court entered a preliminary injunction against Defendants. (Preliminary Injunction Order, dated Oct. 18, 2018 [dkt. no. 9].)

The Wang Defendants answered Mattel's complaint and
thereafter filed an Amended Answer.  (See Amended Answer
("Ans."), dated Apr. 1, 2019 [dkt. no. 48].)  The Court denied
the Wang Defendants' subsequent motion to dismiss this action
for lack of personal jurisdiction and insufficient service of
process.  Mattel, Inc. v. AnimeFun Store, No. 18 CIV. 8824
(LAP), 2020 WL 2097624, at *6 (S.D.N.Y. May 1, 2020).

## II.  Legal Standards

### a.  Summary Judgment

Summary judgment is required where "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  The movant bears the burden to show the absence
of a dispute as to a material fact.  See Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986).  Where the non-moving party
bears the burden of proof at trial, the moving party may
discharge its summary judgment burden in "two ways: (1) by
submitting evidence that negates an essential element of the
non-moving party's claim, or (2) by demonstrating that the non-
moving party's evidence is insufficient to establish an
essential element of the non-moving party's claim."  Nick's
Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d
Cir. 2017).  In assessing the record, the Court "must view the
evidence in the light most favorable to the [non-moving] party,"

14

Tolan v. Cotton, 572 U.S. 650, 657 (2014) (internal quotation marks omitted), and "resolve all ambiguities and draw all reasonable inferences against the movant," Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 427 (2d Cir. 2013).  At the same time, "the mere existence of some alleged factual dispute" is not enough to prevent summary judgment--the dispute must be material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A fact is "material" only if it "might affect the outcome of the suit under the governing law."  Id. at 248. Finally, "conclusory statements or mere allegations are not sufficient to defeat a summary judgment motion."  Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (alterations omitted).

## I.  **Discussion**

Mattel moves for summary judgment as to the Wang Defendants' liability on its claims for (1) trademark counterfeiting and infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b); (2) false designation of origin, passing off, and unfair competition in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a); and (3) state and common law claims, including (i) deceptive acts in violation of N.Y. Gen. Bus. Law § 349; (ii) false advertising in violation of N.Y. Gen.

Bus. Law § 350; (iii) unfair competition; and (iv) unjust enrichment.[8]  The Court addresses each in turn.

### 1. <u>Trademark Counterfeiting and Infringement in Violation of the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b)</u>

Under the Lanham Act, a person is liable who, without the consent of the registrant, uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark-- or reproduces, counterfeits, copies, or colorably imitates a registered mark and applies such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used--in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.  15 U.S.C. § 1114(1)(a)-(b).  In a Lanham Act action, "summary judgment based on a likelihood of confusion . . . 'is appropriate where the undisputed evidence would lead only to one conclusion.'"  <u>Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.</u>, 97 F.Supp.3d 485, 493 (S.D.N.Y. 2015) (quoting <u>Sports Auth., Inc. v. Prime Hospitality Corp.</u>, 89 F.3d 955, 960 (2d Cir. 1996)).  To prevail on a trademark-infringement claim under 15 U.S.C. § 1114, a plaintiff must

---

[8] Plaintiff does not move for summary judgment on damages or on the issue of liability for its copyright infringement claim. (<u>See</u> Mot. at 1 n.4.)

first "establish that (1) it has a valid mark that is entitled
to protection under the Lanham Act; and that (2) the defendant
used the mark, (3) in commerce, (4) in connection with the sale
. . . or advertising of goods or services, (5) without the
plaintiff's consent." 1-800 Contacts, Inc. v WhenU.com, Inc.,
414 F.3d 400, 406-07 (2d Cir. 2005) (internal quotations
omitted).  Second, Plaintiff must show "that defendant's use of
that mark is likely to cause confusion . . . as to the
affiliation, connection, or association of [defendant] with
[plaintiff], or as to the origin, sponsorship, or approval of
[the defendant's] goods, services, or commercial activities by
[plaintiff]." Id. at 407 (internal quotation marks omitted).

Plaintiff has met each of these requirements.  Mattel's
United States Patent and Trademark Office trademark
registrations are prima facie evidence of the validity of the
marks.  (See Pl.'s 56.1 ¶ 31; Adler Decl. II ¶ 10; Ex. A to
Adler Decl. II [dkt. no. 90-1]); Spin Master Ltd. v. 158, 463 F.
Supp. 3d 348, 368 (S.D.N.Y. 2020), adhered to in part on
reconsideration, No. 18-CV-1774 (LJL), 2020 WL 5350541 (S.D.N.Y.
Sept. 4, 2020) ("[A] plaintiff may provide a certificate of
registration with the U.S. Patent and Trademark Office for the
mark as prima facie evidence of its validity.") (citing Lane
Capital Mgmt., Inc. v. Lane Capital Mgmt, Inc., 192 F.3d 337,
345 (2d Cir. 1999)).  Moreover, the Parties do not dispute that

the Wang Defendants used the UNO marks in connection with the offering for sale, advertising, or sale of products through their merchant storefronts on AliExpress and DHgate.  (Defs.' Counter 56.1 ¶¶ 5, 11, 12, 17, 22.)  Nor is it disputed that the Wang Defendants are not, nor have they ever been, authorized distributors or licensees of the UNO products, nor has Mattel ever consented to their use of the UNO marks or any similar mark.  (Id. ¶¶ 59-60.)

There also is no genuine issue of fact as to whether the products sold by Defendants are likely to cause confusion.  "In considering the likelihood of confusion, courts in this Circuit generally look to the factors set forth in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir.1961).  See Coach, Inc. v. Horizon Trading USA Inc., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012).  Here, however, "the Court need not undertake a factor-by-factor analysis under Polaroid because counterfeits, by their very nature, cause confusion." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003).  Counterfeits are defined under the Lanham Act as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  "[T]he Court need only determine the more fundamental question of whether there are items to be confused in the first place-- that is, whether the items at issue here are, in fact,

counterfeit and whether Defendants sold those items." Gucci, 286 F. Supp. 2d at 287.

The UNO products offered for sale by the Wang Defendants are demonstrably counterfeit.  Indeed, even the Wang Defendants cannot spot the difference between the products they offered for sale and the real thing: the operators of each of the Wang Defendants admitted that they cannot tell the difference between the UNO products they purchased from vendors in China and the UNO products offered for sale or sold by Plaintiff.  (Pl.'s 56.1 ¶¶ 7, 14, 19, 24; see also Jin Decl. ¶ 23; Lai Decl. ¶ 24; Shi Decl. ¶ 24; Wang Decl. ¶ 23.)  Despite these similarities, closer inspection has shown that the Wang Defendants' listings bearing the UNO mark show improper or no packaging, incorrect labeling, and wrong coloring.  (Pl.'s 56.1 ¶ 62; Adler Decl. ¶ 27.)  These inspections, conducted by, among others, NAL, which was tasked by Plaintiff to review potentially infringing listings, confirmed that these products were virtually identical but not genuine.  (Arnaiz Decl. ¶ 7.)[9]  Mattel confirmed that it

---

[9] The Wang Defendants contend in their opposition that because "it is possible that Defendants purchased the products from suppliers that are associated with Mattel's single third-party Chinese vendor," "genuine issues for trail [sic] exists [sic]." (Opp. at 3.)  Such speculation without any specific supporting facts is insufficient to defeat summary judgment on Mattel's claim.  See e.g., Gucci, 286 F. Supp. 2d at 289 (granting summary judgment in favor of plaintiff where defendant failed to

*(Footnote Continues on Following Page)*

has not manufactured or sold any of the Mattel look-alike products offered for sale or sold by the Wang Defendants.  (See Adler. Decl. II ¶ 21.)  Because the Wang Defendants' marks are counterfeit, by their very nature, they likely are to cause confusion.  See e.g., Coach, 908 F. Supp. 2d at 434.

Accordingly, summary judgment is warranted in Plaintiff's favor on its claims under the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b).

### 2. **False Designation of Origin, Passing Off, & Unfair Competition (15 U.S.C. § 1125(a), Lanham Act § 43(a))**

15 U.S.C. § 1125(a) bars as false designation the use in commerce of any word, term, name, symbol, device, or combination thereof, which is likely to cause confusion as to the origin, sponsorship, or approval of a person's goods with those of another person or which misrepresents the nature, characteristics, qualities, or geographic origin of another person's goods.  15 U.S.C. § 1125(a)(1)(A)-(B).  Because Mattel is entitled to summary judgment on its trademark counterfeiting and infringement claims, Mattel also is entitled to summary judgment on its claims for false designation of origin, passing off, and unfair competition under 15 U.S.C. § 1125(a).  See

---

"produce any affirmative evidence that the items in evidence are actually authentic" upon plaintiff's prima facie showing).

Ontel Prods. Corp. v. Airbrushpainting Makeup Store, No. 17-CV-871 (KBF), 2017 WL 1969681, at *3 (S.D.N.Y. May 12, 2017) ("Because Ontel is entitled to summary judgment on its trademark counterfeiting and infringement claims, Ontel is also entitled to summary judgment on its claims for false designation of origin, passing off, and unfair competition under 15 U.S.C. § 1125(a)."); Burberry Ltd. & Burberry USA v. Designers Imps., Inc., No. 07 CIV. 3997 (PAC), 2010 WL 199906, at *7 (S.D.N.Y. Jan. 19, 2010) ("Having established its claim for federal trademark infringement under Section 32, it is unnecessary for the plaintiff to make any additional showing to satisfy Section 43(a).") (citing Russian Kurier, Inc. v. Russian Am. Kurier, Inc., 899 F. Supp. 1204, 1208 (S.D.N.Y. 1995)).

    **3. State Law Claims**

        **a. New York General Business Law §§ 349 and 350**

Plaintiff contends that it also is entitled to summary judgment on its state law claims for violations of New York

General Business Law Sections 349[10] and 350[11] and on its common law claims for unfair competition and unjust enrichment.

"The standards for bringing a claim under § 43(a) of the Lanham Act are substantially the same as those applied to claims brought under the New York common law for unfair competition and §§ 349 and 350 of the New York General Business Law." Avon Prods., Inc. v. S.C. Johnson & Son, Inc., 984 F. Supp. 768, 800 (S.D.N.Y. 1997). As for §§ 349 and 350 of the New York General Business Law, however, "[i]t is well settled . . . that infringement claims are not cognizable under these statutes unless there is a specific and substantial injury to the public interest over and above the ordinary trademark infringement or dilution." Mattel, Inc. v. 1622758984, No. 18-CV-8821 (AJN), 2020 WL 2832812, at *4 (S.D.N.Y. May 31, 2020) (citing Luv N' Care, Ltd. v. Walgreen Co., 695 F. Supp. 2d 125, 135 (S.D.N.Y. 2010) and Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F. Supp. 2d 410, 413 n.2 (S.D.N.Y. 2002) ("[T]he majority [of courts] have held that trademark cases are outside the scope

---

[10] "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a).

[11] "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. Law § 350.

of this general consumer protection statute.")).  Plaintiff points to no record evidence that would support a finding of an injury to the public beyond that attendant to run-of-the-mill trademark infringement.

Accordingly, summary judgment on Plaintiff's claims arising out of New York General Business Law §§ 349 and 350 is denied.

### b. **Unfair Competition**

"A claim under the Lanham Act, coupled with a showing of bad faith or intent, establishes a claim for unfair competition" under New York law.  Burberry, 2010 WL 199906, at *8 (citing Girl Scouts of U.S.A. v. Bantam Doubleday Dell Publ'g Grp., Inc., 808 F. Supp. 1112, 1131 (S.D.N.Y. 1992)).  "Use of a counterfeit mark creates a presumption of bad faith under New York law."  Id. (citing Philip Morris U.S.A., Inc. v. Filizardo, No. 03 CIV. 5891 (HB), 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004)).  Because Plaintiff has shown that the Wang Defendants sold UNO products that were counterfeit, Plaintiff is entitled to summary judgment on its state law claim for unfair competition.

### c. **Unjust Enrichment**

"The elements of unjust enrichment under New York law are: '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'"  Perfect Pearl

Co. v. Majestic Pearl & Stone, Inc., 887 F. Supp. 2d 519, 544
(S.D.N.Y. 2012) (quoting Briarpatch, Ltd., L.P. v. Phoenix
Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004)).  However,
unjust enrichment "is available only in unusual situations when,
though the defendant has not breached a contract nor committed a
recognized tort, circumstances create an equitable obligation
running from the defendant to the plaintiff . . . . An unjust
enrichment claim is not available where it simply duplicates, or
replaces, a conventional contract or tort claim."  Mattel, 2020
WL 2832812, at *5 (quoting Corsello v. Verizon N.Y., Inc., 18
N.Y.3d 777, 790 (2012)).  Courts therefore frequently dismiss
unjust enrichment claims brought in similar Lanham Act cases.
See id; Boost Worldwide, Inc. v. Talk Til U Drop Wireless, Inc.,
No. 5:14-CV-86 (MAD/TWD), 2014 WL 5026777, at *2 n.2 (N.D.N.Y.
Oct. 8, 2014); Goldemberg v. Johnson & Johnson Consumer Cos.,
Inc., 8 F. Supp. 3d 467, 483-84 (S.D.N.Y. 2014).  Having shown
no circumstances that warrant this equitable remedy, denial of
summary judgment on Plaintiff's unjust enrichment claim likewise
is appropriate here.

## II.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary
Judgment (dkt. no. 87) is GRANTED in part and DENIED in part.
Plaintiff's motion is granted as to the Wang Defendants'
liability for (1) trademark counterfeiting and infringement in

violation of the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b); (2) false designation of origin, passing off, and unfair competition in violation of Lanham Act, 15 U.S.C. § 1125(a); and (3) unfair competition under state common law.  Plaintiff's motion is denied as to its claims under (1) N.Y. Gen. Bus. Law § 349; (2) N.Y. Gen. Bus. Law § 350; and (3) on its common law claim for unjust enrichment.

The Clerk of Court shall close the open motion.

Counsel shall confer and inform the Court by letter no later than March 5, 2021 of the status of the remaining claims against the Wang Defendants and how the parties propose to proceed.  Counsel for Plaintiff shall also inform the Court by the same date of the status of all claims remaining against all other defendants.

**SO ORDERED.**

Dated:    New York, New York
          February 26, 2021

_____
LORETTA A. PRESKA
Senior United States District Judge