UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MATTEL, INC.,

                    Plaintiff,

 -against-

 ARMING, et al.,

                    Defendants.

---

18 Civ. 8824 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court is Plaintiff Mattel, Inc. ("Mattel")'s motion[1] for entry of default judgment and a permanent injunction as to Defendants arming, Blossoming Store, Chengdu Xiangze Discount Store, china_energy, china_souldoo, d-bands Store, dhgatetoysfactory, doubled, FZCSPEEDS Store, gift_master, Globle Village Outdoor Store, HSPZCJ Store, IMDG Store, itmomo, Jiangxi Hengte Industry Co., Ltd., kimwood1608, kyshadow, mayanlishop, moreluer Fishing gear Store, Party Perfecto(Yiwu Ridou Imp.& Exp. Co.,Ltd.) Store, Pond, RC Camera Drone Store, rocky_store, Shenzhen Weichengwang Paper Packaging Co., Ltd., Shenzhen Yongxin Technology Co., Ltd., Shijiazhuang Zhuxin Industry & Trade Co., Ltd., Shop Fun Store, Shop3615057 Store, sixin_toy, Star Peng Musical

---

[1] (Proposed Order to Show Cause [dkt. no. 99]; Plaintiff's Memorandum of Law in Support of its Motion for Default Judgment and a Permanent Injunction, dated Aug. 21, 2020 [dkt. no. 101].)

Instruments, Sunma Store, tina310, toys_carol, We Outdoor Store, wholesalecard, xiongqin2017, Yiwu Sunpend Import & Export Co., Ltd., yufanwatch, zhang0828 and ZHX Outdoor Store (collectively, the "Defaulting Defendants"). The Defaulting Defendants, which are User Accounts and Merchant Storefronts on Alibaba.com, AliExpress.com and/or DHgate.com, did not answer, otherwise respond to the Complaint, or appear in this action. (Exhibit D to Yamali Affidavit ("Yamali Aff. Ex. D"), dated Aug. 18, 2020 [dkt. no. 100-4].)

For the reasons stated below, Plaintiff's motion for default judgment is <u>GRANTED</u> in part and <u>DENIED</u> in part.

## I.  **Background**

### a. **Facts**

Mattel is a leading designer, developer, marketer, manufacturer, and distributor of children's products sold under well-known brand names, including Barbie, Hot Wheels, American Girl, and Fisher-Price. (<u>See</u> Declaration of Ray Adler in Support of Plaintiff's Application for a Temporary Restraining Order ("Adler Decl."), dated Sept. 21, 2018 [dkt. no. 23], ¶ 3.) Plaintiff sells its Mattel products worldwide through major retailers, toys stores, and online marketplaces. (Adler Decl. ¶ 4.)

One of Mattel's most popular products is the UNO card game ("UNO Products"), wherein players during each turn attempt to

discard all seven of their cards and avoid drawing more by matching the card in hand with a card on the deck.  (Adler Decl. ¶ 5.)  When one card remains in hand, the player must signal the game is nearly complete by announcing "UNO" or risks a penalty of drawing more cards.  (Id.)

Mattel has filed for and obtained federal trademark registrations for the products' marks ("UNO Marks"). (Declaration of Ray Adler in Support of Plaintiff's Motion for Summary Judgment ("Adler Decl. II"), dated July 30, 2020 [dkt. no. 90], ¶ 9.)  Mattel owns the UNO Registrations covering the UNO Marks, including U.S. Trademark Registration No. 1,005,397, for "UNO" for goods in Class 28 and No. 5,125,593 for the wordmark "UNO" in Class 9.  (Adler Decl. II ¶ 10; Ex. A to Adler Decl. II [dkt. no. 90-1], at 2-5 of 5.)  Plaintiff has spent substantial time, money, and effort in building and developing consumer recognition, awareness, and goodwill in its UNO Products and UNO Marks.  (Adler Decl. II ¶ 13.)

Mattel has worked to protect its interest in the UNO Products, UNO Marks, and UNO Works.  The success of the UNO products is due in part to Mattel's marketing and promotional efforts, in addition to its use of high-quality materials and processes.  (Adler Decl. ¶ 15.)  Mattel's quality of products and consumers' word-of-mouth praise have made the UNO Marks, UNO Works, and UNO Products popular in the public and accordingly

3

afforded Mattel a valuable reputation.  (Complaint ("Compl."), dated Sept. 26, 2018 [dkt. no. 15], ¶ 75.)

As of September 2018, approximately 90% of Mattel's single basic UNO products available to consumers in the U.S. were manufactured in the U.S., while the remaining 10% were manufactured and sold by a single vendor, directly to retailers. (Adler Decl. II ¶ 16.)  No party other than Mattel and its authorized licensees and distributors is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the UNO Marks or UNO Works absent Mattel's express permission.  (Adler Decl. ¶ 21.)  The Defaulting Defendants are not and have never been authorized distributors or licensees of the UNO Products, nor has Mattel ever consented to Defaulting Defendants' use of the UNO Marks, UNO Works, or any identical or substantially similar marks or artwork.  (Adler Decl. ¶ 26.)  The Defaulting Defendants are individuals or businesses located in China that conduct business in the U.S., including New York City, and other countries via user accounts or merchant storefronts on Alibaba, AliExpress.com, or DHgate.com.  (Exhibit C to Complaint ("Compl. Ex. C"), dated Sep. 26, 2018 [dkt. nos. 15-1, 15-2, 15-3, 15-4, 15-5, 15-6].)

Mattel retained NAL, a company that provides intellectual property infringement research services, to investigate parties offering for sale and/or selling products that could infringe on

4

the UNO marks.  (Compl. ¶ 85.)  NAL identified that the
Defendants were selling or offering for sale Counterfeit
Products through the merchant storefronts and user accounts and
that such products used the UNO Marks or featured or displayed
one or more of the UNO Works.  (Declaration of Jessica Arnaiz in
Support of Plaintiff's Application for a Temporary Restraining
Order ("Arnaiz Decl."), dated Sept. 21, 2018 [dkt. no. 22],
¶¶ 6-7.)  Such counterfeit products were virtually identical
copies of the UNO Marks or UNO Works.  (Id. ¶ 7.)  NAL contacted
the Defendants through its respective merchant storefront on the
online marketplace platforms AliExpress.com and DHgate.com and
expressed interest in placing a bulk order for the counterfeit
products.  (Id. ¶ 8.)  NAL also confirmed that each Defendant
was still offering for sale the counterfeit products, including
to customers in New York.  (Id. ¶ 15.)

   **b. <u>Procedural History</u>**

    Mattel initiated this action against the Defaulting
Defendants and numerous other online merchants, asserting claims
for (1) trademark counterfeiting in violation of the Lanham Act,
15 U.S.C. §§ 1114(1)(b), 1116(d), 1117(b)-(c);[2] (2) trademark

---

[2] Plaintiff does not seek default judgment with respect to U.S.
Trademark Registration No. 2,008,897, contained in the
Complaint, because Plaintiff allowed that registration to lapse.

*(Footnote Continues on Following Page)*

infringement in violation of the Lanham Act, 15 U.S.C. § 1114;
(3) false designation of origin, passing off, and unfair
competition in violation of the Lanham Act, 15 U.S.C. § 1125(a);
(4) federal copyright infringement in violation of 17 U.S.C.
§ 501(a); (5) state and common law claims, including (i)
deceptive acts in violation of N.Y. Gen. Bus. Law § 349; (ii)
false advertising in violation of N.Y. Gen. Bus. Law § 350;
(iii) unfair competition; and (iv) unjust enrichment.[3]  (Compl.
¶¶ 103-162.)

The Court entered a temporary restraining order against the
Defaulting Defendants on October 4, 2018.[4]  (Order, dated Oct. 4,
2018 [dkt. no. 11].)  On October 11, 2018, Plaintiff served each
Defaulting Defendant the Summons, Complaint, TRO, and all papers
filed in support of Plaintiff's Application pursuant to the TRO.

---

(Plaintiff's Memorandum of Law in Support of its Motion for
(*Footnote Continued from Previous Page*)

Default Judgment and a Permanent Injunction Against Defaulting
Defendants ("Mot."), dated Aug. 21, 2020 [dkt. no. 101], at vi
n.1.)
[3] Plaintiff only seeks damages for the first and second causes of
action of trademark counterfeiting and infringement, does not
waive its fourth cause of action for copyright infringement, and
does not seek monetary relief in connection with the remaining
causes of actions pleaded in the Complaint.  (Mot. at 1 n.3.)

[4] The TRO authorized service to be completed through (1) delivery
of PDF copies of the Order with the Summons and Complaint and a
link to a secure website where Defendants can download such PDFs
and all papers filed in support of Plaintiff's Application; (2)
delivery of message to Defendants through the same means
Plaintiff's agents had previously communicated with Defendants.

(Yamali Aff. ¶ 14.)   After Defaulting Defendants failed to appear at the October 18, 2018 show-cause hearing, the Court entered a preliminary injunction against all Defaulting Defendants with the same terms as the TRO.  (Preliminary Injunction Order, dated October 18, 2018, [dkt. no. 9].)

On August 18, 2020, the Clerk of the Court entered Certificates of Default as to the Defaulting Defendants. (Certificate of Default, dated Aug. 18, 2020 [dkt. no. 97].) Plaintiffs thereafter moved, by order to show cause, for default judgment and a permanent injunction.  (Proposed Order to Show Cause [dkt. no. 99]; Plaintiff's Memorandum of Law in Support of its Motion for Default Judgment and a Permanent Injunction, dated Aug. 21, 2020 [dkt. no. 101].)  The Defaulting Defendants failed to respond to the Court's order to show cause why a default judgment and permanent injunction should not be entered as to the Defaulting Defendants.  (See Order to Show Cause, dated Aug. 24, 2020 [dkt. no. 104].)

## II.  **Legal Standards**

### a. **Jurisdiction**

The Complaint invokes federal subject-matter jurisdiction over the claims asserted pursuant to (1) 28 U.S.C. §§ 1331 and 1338(a), (2) 15 U.S.C. § 1121 as an action for violations of the Lanham Act, 15 U.S.C. § 1051 et seq., and (3) 28 U.S.C. § 1338(b) for claims for false designation of origin and unfair

competition.  (Compl. ¶ 1.)  Pursuant to 28 U.S.C. § 1332, there
is diversity between the parties, and the matter in controversy
exceeds seventy-five thousand dollars.  (Id.)  The Complaint
also asserts that the Court has supplemental jurisdiction
because the additional claims closely relate to the federal
claims to form the same case or controversy pursuant to 28
U.S.C. § 1367(a).  (Id.)

The Complaint invokes personal jurisdiction pursuant to
N.Y. C.P.L.R. §302(a)(1) and N.Y. C.P.L.R. §302(a)(3).  (Id. at
¶ 2.)[5]  In the alternative, the Complaint invokes personal
jurisdiction pursuant to Federal Rule of Civil Procedure 4(k).
(Id.)

### b. Default Judgment

Federal Rule of Civil Procedure 55 provides the "two-step
process" for the entry of default judgment against a party:
first, the entry of default, and second, the entry of default
judgment.  Fed. R. Civ. P. 55(a)-(b); see also New York v.
Green, 420 F.3d 99, 104 (2d Cir. 2005).  When a party has not
appeared or defended, Rule 55(a) allows the clerk of the court
to enter a default against the party.  Fed. R. Civ. P. 55(a);
see also Green, 420 F.3d at 104.  Entry of default "formalizes a

---

[5] Personal jurisdiction exists because of Defendants' regularly
conducted business in New York and in this judicial district via
their online storefronts.  (See Compl. Ex. C.)

judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." [6] City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011); Fed. R. Civ. P. 55(a).  Following entry of default, a plaintiff seeks judgment by default under Rule 55(b)(2) when its claims are not for a sum certain.  Fed. R. Civ. P. 55(b)(2); see also Green, 420 F.3d at 104.  This second step "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)."[7]  Mickalis Pawn Shop, 645 F.3d at 128.

Entry of default judgment turns on whether the complaint's allegations against the defaulting party are well-pleaded.  See Mickalis Pawn Shop, 645 F.3d at 137.  Once a party is in default, "a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor."  Belizaire v. RAV Investigative and Sec. Servs., Ltd., 61 F. Supp. 3d 336, 344

---

[6] However, the entry of default that establishes liability "is not an admission of damages."  Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009).

[7] Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 55(c).

(S.D.N.Y. 2014).  However, a party in default does not admit conclusions of law.  See Finkel, 577 F.3d at 84.  As a result, a district court must determine whether the plaintiff's allegations sufficiently establish the defendant's liability as a matter of law, id., where the legal sufficiency of such claims are analyzed under the familiar plausibility standard in Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), drawing inferences in the movant's favor.  Belizare, 61 F. Supp. 3d at 344.

## I.   **Discussion**

Mattel moves for default judgment as to the Defaulting Defendants' liability on its claims for (1) trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), 1117(b)-(c); (2) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (3) false designation of origin, passing off, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (4) federal copyright infringement in violation of 17 U.S.C. § 501(a); (5) state and common law claims, including (i) deceptive acts in violation of N.Y. Gen. Bus. Law § 349; (ii) false advertising in violation of N.Y. Gen. Bus. Law § 350; (iii) unfair competition; and (iv) unjust enrichment.  (Compl. ¶¶ 103-162.)  The Court addresses each in turn.

1. **<u>Trademark Counterfeiting and Infringement in Violation of the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b), 1116(d), 1117(b)-(c)</u>**

Under the Lanham Act, a person is liable who, without the consent of the registrant, uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark--or reproduces, counterfeits, copies, or colorably imitates a registered mark and applies such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used--in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. 15 U.S.C. § 1114(1)(a)-(b). To prevail on a trademark-infringement claim under 15 U.S.C. § 1114, a plaintiff must, <u>first</u>, "establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services, (5) without the plaintiff's consent." <u>1-800 Contacts, Inc. v WhenU.com, Inc.</u>, 414 F.3d 400, 406-07 (2d Cir. 2005) (internal quotations omitted). <u>Second</u>, a plaintiff must show "that defendant's use of that mark is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship,

11

or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]." Id. at 407 (internal quotation marks omitted).

As to the first requirement, Mattel has shown sufficiently that it has a valid mark that the Defaulting Defendants used in commerce to advertise their products without Mattel's consent. First, "[a] certificate of registration with the Patent and Trademark Office is prima facie evidence that the mark is registered and valid." Lane Capital Mgmt., Inc. v. Lane Capital Mgmt, Inc., 192 F.3d 337, 345 (2d Cir. 1999). Accordingly, and as the Court found in its prior order granting summary judgment in Mattel's favor as to the Wang Defendants, see Mattel, Inc. v. AnimeFun Store, No. 18 CIV. 8824 (LAP), 2021 WL 765766, at *5-6 (S.D.N.Y. Feb. 26, 2021), Mattel's United States Patent and Trademark Office trademark registrations are prima facie evidence of the validity of the marks. (See Adler Decl. II ¶ 10; Ex. A to Adler Decl. II [dkt. no. 90-1].) Moreover, the Defaulting Defendants used the UNO Marks in connection with the offering for sale, advertising, or sale of products through their merchant storefronts and are not, nor have they ever been, authorized distributors or licensees of the UNO Products, nor has Mattel ever consented to their use of the UNO Marks or any similar mark. (Compl. ¶ 106.)

As to the likelihood of confusion, the Defaulting
Defendants' products are identical or substantially
indistinguishable from the UNO Marks.  (Compl. ¶ 106).  Mattel's
allegations sufficiently support the conclusion that Defaulting
Defendants' products are counterfeits because the average
purchaser would find the allegedly counterfeit mark
substantially similar to the registered mark on the actual
merchandise, see, e.g., Montres Rolex, S.A. v. Snyder, 718 F.2d
524, 531-32 (2d Cir. 1983), "because counterfeits, by their very
nature, cause confusion," Gucci Am., Inc. v. Duty Free Apparel,
Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003).

Accordingly, entry of default judgment as to the Defaulting
Defendants is warranted on Mattel's counterfeiting and
infringement claims under the Lanham Act, 15 U.S.C.
§ 1114(1)(a)-(b).

## 2. **False Designation of Origin, Passing Off, & Unfair Competition, 15 U.S.C. § 1125(a)**

15 U.S.C. § 1125(a) bars as false designation the use in
commerce of any word, term, name, symbol, device, or combination
thereof, which is likely to cause confusion as to the origin,
sponsorship, or approval of a person's goods with those of
another person or which misrepresents the nature,
characteristics, qualities, or geographic origin of another
person's goods.  15 U.S.C. § 1125(a)(1)(A)-(B).  Because Mattel

is entitled to default judgment on its trademark counterfeiting
and infringement claims, Mattel is also entitled to default
judgment on its claims for false designation of origin, passing
off, and unfair competition under 15 U.S.C. § 1125(a).  See
Virgin Enters. Ltd v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)
(asserting that a claim for trademark infringement, brought
either under 15 U.S.C. § 1114(1) for infringement of a
registered mark or under 15 U.S.C. § 1125(a) for infringement of
rights acquired by use, is analyzed under the same test); see
also Burberry Ltd. & Burberry USA v. Designers Imps., Inc., No.
07 CIV. 3997 (PAC), 2010 WL 199906, at *7 (S.D.N.Y. Jan. 19,
2010) ("Having established its claim for federal trademark
infringement under Section 32 [of the Lanham Act], it is
unnecessary for the plaintiff to make any additional showing to
satisfy Section 43(a).") (citing Russian Kurier, Inc. v. Russian
Am. Kurier, Inc., 899 F. Supp. 1204, 1208 (S.D.N.Y. 1995)).  As
a result, default judgment is warranted in Plaintiff's favor on
its false designation of origin, passing off, and unfair
competition claims.

### 3. Copyright Infringement, 17 U.S.C. § 501(a)

A plaintiff must establish (1) ownership of a valid
copyright and (2) infringement of that copyright by the
defendant.  Feist Publ'ns Inc. v. Rural Tel. Serv. Co., 499 U.S.
230, 360 (1991).  Because there is a statutory presumption that

14

registered copyrights are valid, <u>Yurman Design Inc. v. PAJ, Inc.</u>, 262 F.3d 101, 109 (2d Cir. 2001), a copyright owner must demonstrate (1) that the defendant copied the owner's work and (2) that the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of the owner's work. <u>Id.</u> at 110.  A plaintiff may prove copying without showing access when the "two works are so strikingly similar as to preclude the possibility of independent creation." <u>Lipton v. Nature Co.</u>, 71 F.3d 464, 471 (2d Cir. 1995).

Plaintiff fulfills both criteria here.  Mattel alleges that it is the sole owner of the UNO Works and has provided its registration certificates.[8]  (<u>See</u> Compl. ¶ 136; Adler Decl. ¶ 14; Exhibit B to Adler Decl. ("Adler Decl. Ex. B"), dated Sept. 21, 2018 [dkt. no. 23].)  For the same reasons that the allegations in Mattel's Complaint warrant default judgment on Mattel's counterfeiting claim, Plaintiff has shown actual copying and substantial similarity.  (<u>See</u> Compl. ¶ 106).  Accordingly, default judgment is warranted for Plaintiff's copyright infringement claim.

    4. <u>**State Law Claims**</u>

      a. <u>**New York General Business Law §§ 349 and 350**</u>

---

[8] The UNO Works refers to the U.S. Copyright Registration numbers referring to UNO Game Packaging.  (Adler Decl. ¶ 14.)

Mattel contends that it also is entitled to default judgment on its state law claims for violations of New York General Business Law Sections 349[9] and 350[10] and on its common law claims for unfair competition and unjust enrichment.

As the Court found in its order granting in part Mattel's motion for summary judgment against the Wang Defendants, Mattel's claims under §§ 349 and 350 lack a showing of a specific injury beyond those typical of their federal law claims.  See Mattel, 2021 WL 765766, at *7.  "The standards for bringing a claim under § 43(a)[11] of the Lanham Act are substantially the same as those applied to claims brought under the New York common law for unfair competition and §§ 349 and 350 of the New York General Business Law."  Avon Prods., Inc. v. S.C. Johnson & Son, Inc., 984 F. Supp. 768, 800 (S.D.N.Y. 1997).  As for §§ 349 and 350 of the New York General Business Law, however, "[i]t is well settled . . .  that infringement claims are not cognizable under these statutes unless there is a specific and substantial injury to the public interest over and

---

[9] "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349(a).

[10] "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."  N.Y. Gen. Bus. Law § 350.
[11] Earlier in this order, Section 43(a) is referred to as 15 U.S.C. § 1125(a).

above the ordinary trademark infringement or dilution." <u>Mattel,
Inc. v. 1622758984</u>, No. 18-CV-8821 (AJN), 2020 WL 2832812, at *4
(S.D.N.Y. May 31, 2020) (citing <u>Luv N' Care, Ltd. v. Walgreen
Co.</u>, 695 F. Supp. 2d 125, 135 (S.D.N.Y. 2010) and <u>Tommy Hilfiger
Licensing, Inc. v. Nature Labs, LLC</u>, 221 F. Supp. 2d 410, 413
n.2 (S.D.N.Y. 2002) ("[T]he majority [of courts] have held that
trademark cases are outside the scope of this general consumer
protection statute.")).  As before, Mattel alleges no facts that
would support a finding of a specific injury to the public
beyond ordinary trademark infringement.  <u>See</u> <u>Mattel</u>, 2021 WL
765766, at *7.

Accordingly, Mattel's motion for default judgment as to its
claims arising out of New York General Business Law §§ 349 and
350 is denied.

### b. <u>Unfair Competition</u>

Entry of default judgment as to Mattel's common law claim
for unfair competition is warranted here.  "A claim under the
Lanham Act, coupled with a showing of bad faith or intent,
establishes a claim for unfair competition" under New York law.
<u>Burberry</u>, 2010 WL 199906, at *8 (citing <u>Girl Scouts of U.S.A. v.
Bantam Doubleday Dell Publ'g Grp., Inc.</u>, 808 F. Supp. 1112, 1131
(S.D.N.Y. 1992)).  "Use of a counterfeit mark creates a
presumption of bad faith under New York law."  <u>Id.</u> (citing

_Philip Morris U.S.A., Inc. v. Filizardo_, No. 03 CIV. 5891 (HB), 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004)).

Accordingly, because Plaintiff has shown that the Defaulting Defendants sold UNO products that were counterfeit, Plaintiff is entitled to default judgment on its state law claim for unfair competition.

### c. **Unjust Enrichment**

"The elements of unjust enrichment under New York law are: '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" _Perfect Pearl Co. v. Majestic Pearl & Stone, Inc._, 887 F. Supp. 2d 519, 544 (S.D.N.Y. 2012) (quoting _Briarpatch, Ltd., L.P. v. Phoenix Pictures, Inc._, 373 F.3d 296, 306 (2d Cir. 2004)). However, unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff . . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." _Mattel_, 2020 WL 2832812, at *5 (quoting _Corsello v. Verizon N.Y., Inc._, 18 N.Y.3d 777, 790 (2012)). Courts therefore frequently dismiss unjust enrichment claims brought in similar Lanham Act cases. See id; _Boost Worldwide, Inc. v. Talk Til U Drop Wireless, Inc._,

18

No. 5:14-CV-86 (MAD/TWD), 2014 WL 5026777, at *2 n.2 (N.D.N.Y. Oct. 8, 2014); Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d 467, 483–84 (S.D.N.Y. 2014).

As with its claims against the Wang Defendants, Mattel has not shown circumstances here that warrant this equitable remedy. Accordingly, entry of default judgment for Mattel's duplicative unjust enrichment claim is denied.  See Mattel, 2021 WL 765766, at *7.

### 5. Remedies

Because Plaintiff has established the Defaulting Defendant's liability for Mattel's Lanham Act, copyright, and unfair competition claims, the Court turns to remedies.  Mattel seeks the following relief from the Defaulting Defendants: (1) permanent injunction by default, (2) an award of $50,000.00 in statutory damages against each of the forty Defaulting Defendants for a total award of $2,000,000.00 pursuant to 15 U.S.C. § 1777(c) and post-judgment interest pursuant to the statutory rate, (3) a post-judgment asset restraint order, and (4) an order authorizing the release and transfer of Defaulting Defendants' frozen assets to satisfy the damages awarded to Plaintiff.  (Mot. at 1.)

### a. Permanent Injunction

The Court may grant injunctive relief to prevent further trademark and copyright violations pursuant to 15 U.S.C. § 1116

19

if the plaintiff has demonstrated (1) that it suffered irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the injunction would not disserve the public interest.  eBay Inc v. Mere Exchange, LLC, 547 U.S. 338, 391 (2006); see Salinger v. Colting, 607 F.3d 68, 77-78 (2d Cir. 2010) (extending the eBay standard to copyright actions); U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011) (extending the eBay standard to trademark infringement actions).

All aforementioned factors favor issuance of a permanent injunction.  "Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable."  U.S. Polo Ass'n, 800 F. Supp. 2d at 540 (citation and internal quotation marks omitted).  Mattel has acquired a valuable reputation and goodwill among the public that is threatened by the exploitation of Mattel's reputation. (Adler Decl. ¶¶ 20, 22.)

Although Alibaba, AliExpress, and DHgate have complied with the TRO and PI Order by freezing the accounts and merchant storefronts, Defaulting Defendants may resume their infringing

20

conduct following the removal of such restraints.  Defaulting
Defendant's failure to respond or appear in any capacity in this
action further supports the presumption that they will continue
their trademark and copyright violations.  Consequently, the
risk of this continued activity satisfies the second element--
that there be no adequate remedy at law--when "the defendant is
likely to continue infringing" plaintiff's intellectual property
rights.  Warner Bros Entm't Inc. v. RDR Books, 575 F. Supp. 2d
513, 553 (S.D.N.Y. 2008).

The balance of hardships favors Plaintiff because "it is
axiomatic that an infringer . . . cannot complain about the loss
of ability to offer its infringing product," see WPIX, Inc. v.
ivi, Inc., 691 F.3d 275, 287 (2d Cir. 2012).  Additionally,
Plaintiff has alleged, and by defaulting the Defaulting
Defendants have conceded, that the Defaulting Defendants' use of
identical products has harmed Mattel's valuable brand
reputation, and will continue to do so.  (Adler Decl. ¶¶ 20,
22.)

Finally, the injunction clearly will not disservice the
public, as it will ensure the continued removal of Defaulting
Defendant's infringing products offline.  Because "the public
has an interest in not being deceived--in being assured that the
mark it associates with a product is not attached to goods of
unknown origin and quality," the permanent injunction is in the

21

public's interest.  N.Y.C. Triathlon, LLC v. Triathlon Club, Inc., 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).

Accordingly, the Defaulting Defendants are permanently enjoined from engaging in the infringing conduct described in the Court's preliminary injunction order, (see Preliminary Injunction Order, dated Oct. 18, 2018 [dkt. no. 9]), pursuant to 15 U.S.C. § 1116.

### b. **Statutory Damages and Post-Judgment Interest**

The entry of a default judgment deems all factual allegations in the complaint true, except for the amount of damages, where the Court must "conduct an inquiry to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Securities, (USA) Inc. v. Alcantara, 183 F.3d 151, 152 (2d Cir. 1999).  Plaintiff requests an award of $50,000.00 against each Defaulting Defendant, who total forty in number. (Mot. at 12.)  For the reasons below, the Court approves Plaintiff's damages requests.

The range of statutory damages under the Lanham Act for willful infringement[12] is $1,000-$2,000,000, and courts have broad discretion in determining the damages awarded in a particular case and can balance the punitive and deterrent

---

[12] Defaulting Defendants acted willfully because infringement is deemed willful "by virtue of [a] default." Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

function of the statutory damages with the aim of not providing a windfall to prevailing plaintiffs.  See 15 U.S.C. § 1117(c); Louis Vuitton Malletier S.A. v. LY USA, Inc., 472 F. App'x 19, 22 (2d Cir. 2012) (summary order).  Because the statute does not provide guidelines, courts within this Circuit look to copyright law for a multifactor test that examines (1) the infringer's profits reaped and expenses saved; (2) the plaintiff's revenues lost; (3) the mark's value; (4) the need to deter potential infringers; (5) the degree of willfulness or innocence of the defendant; (6) the defendant's cooperativeness in providing information relevant to proof of profits and losses; and (7) the need to deter the defendant from future misconduct.  Spin Master Ltd. v. Allan Yuan's Store, 325 F. Supp. 3d 413, 425-26 & n.4 (S.D.N.Y. 2018).

Although the Defaulting Defendants' failure to appear in the action prevents the Court from ascertaining profits, courts have inferred a broad scope of operations in cases dealing with websites that ship and sell to a wide geographic range.  See Spin Master, 325 F. Supp. 3d at 426. (citing Rolex Watch U.S.A., Inc. v. Jones, 99cv2359 (DLC) (FM), 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002.)  The factors the Court can evaluate-- Defendants' uncooperativeness, the value of Mattel's mark, deterrence of other infringers, and willfulness of Defaulting Defendants—-all support a heightened award.  However, because

23

the Court has approved a permanent injunction, the need to deter Defendant from future misconduct does not directly support a higher award.  Nevertheless, the $50,000.00 award and post-judgment interest--pursuant to 28 U.S.C. § 1961(a)--against each of the forty Defaulting Defendants is appropriate.[13]

In Spin Master, defaulting defendants similarly operated under multiple aliases over the internet.  There, the court determined that $50,000 per defaulting defendant was "appropriate and just, given that each defendant sold at least one infringing product." See Spin Master, 325 F. Supp. 3d at 426.  This Court has awarded $50,000 or less per infringing mark or group of marks for small-scale counterfeiting operations that were willful trademark infringements.  See, e.g., All-Star Mktg. Group, LLC v. Media Brands Co., 775 F. Supp. 2d. 613, 623 (S.D.N.Y. 2011) (awarding $50,000 per each mark infringed after notice of trademark claim and $25,000 for those that did not continue infringing on the trademarks after receiving notice).

Accordingly, the Court finds Plaintiff's damages request appropriate and awards Plaintiff $50,000.00 in statutory damages for each of the forty Defaulting Defendants, in addition to post-judgment interest.

---

[13] "Interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).

### c. **Post-Judgment Asset Restraint**

In the alternative, Plaintiff requests that the Court serve a restraining notice pursuant to N.Y. C.P.L.R. §§ 5222, 5225. (Mot. at 19.)  Plaintiff asserts that post-judgment relief is available under N.Y. C.P.L.R. § 5222 and incorporated through Rule 69 of the Federal Rules of Civil Procedure.  (Mot. at 19.) The Court agrees and grants the post-judgment asset restraint. Defaulting Defendants are "forbidden [from] mak[ing] or suffer[ing] any sale, assignment or transfer, or any interference with, any such property" in which they have an interest, "except as set forth in subdivisions (h) and (i) of this section."  N.Y. C.P.L.R. § 5222(b).

Rule 62(a) of the Federal Rules of Civil Procedure stays the execution of and proceedings enforcing judgments for 30 days.  Accordingly, Plaintiff requests a continuance of the pre-judgment asset restraint because the automatic stay and absence of an interim asset freeze provide the Defaulting Defendants a 30-day window to conceal and dissipate their assets.  (Mot. at 22.)  These concerns can be addressed by the immediate enforcement of the judgment, which Rule 62 explicitly grants the Court the authority to order.  See Fed. R. Civ. P. 62, Advisory Committee's Notes (2018) ("Amended Rule 62(a) expressly recognizes the court's authority to dissolve the automatic stay or supersede it by a court-ordered stay.  One reason for

25

dissolving the automatic stay may be a risk that the judgment debtor's assets will be dissipated."). As a result, the Court dissolves the automatic stay imposed by Rule 62 and allows for the immediate enforcement of the judgment.

### d. **Asset Transfer Order**

Finally, Plaintiff requests an asset transfer order pursuant to Rule 64 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1116(a). (Mot. at 16.) Plaintiff does not provide any authority for this relief apart from citing cases that granted similar transfer orders without any legal reasoning, asserting that "their rulings follow a long tradition of decisions and orders in this Court which provide, in tandem with an award of statutory damages, an asset transfer order." (Mot. at 17.)

In the alternative, Plaintiff seeks the asset transfer order under Rule 69 of the Federal Rules of Civil Procedure and pursuant to N.Y. C.P.L.R. §§ 5222, 5225.[14] The requested relief is denied because Plaintiff did not show it gave proper "notice

---

[14] N.Y. C.P.L.R. § 5225 provides that "[u]pon motion of the judgment creditor, upon notice to the judgment debtor, where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff."

to the judgment debtor" as required by N.Y. C.P.L.R. § 5225(a).
Further, orders issued under N.Y. C.P.L.R. § 5225(a) are not
directed at a defendant's frozen assets generally, but to
specific pieces of property.  Because Plaintiff did not identify
particular property and must show that the "judgment debtor is
in possession or custody of money or other personal property in
which he has an interest," Plaintiff's request for entry of an
asset transfer order is denied.  N.Y. C.P.L.R. § 5225(a); see
also Mattel, Inc. v. 1622758984, No. 18-CV-8821 (AJN), 2020 WL
2832812, at *8 (S.D.N.Y. May 31, 2020).

## II.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Default
Judgment [dkt. no. 102] is GRANTED in part and DENIED in part.
Plaintiff's motion is granted as to its claims for (1) trademark
counterfeiting and infringement in violation of the Lanham Act,
15 U.S.C. § 1114(1)(a)-(b); (2) false designation of origin,
passing off, and unfair competition in violation of Lanham Act,
15 U.S.C. § 1125(a); (3) copyright infringement in violation of
17 U.S.C. § 501(a); and (4) unfair competition under the state
common law.  Plaintiff's motion is denied as to its claims under
(1) N.Y. Gen. Bus. Law § 349; (2) N.Y. Gen. Bus. Law § 350; and
(3) on its common law claim for unjust enrichment.

Plaintiff's request for statutory damages as to its
Trademark Counterfeiting and Infringement claims and its request

for a preliminary injunction is granted.  The Court declines to enter an asset transfer order.

Plaintiff shall submit a revised proposed judgment for approval.

**SO ORDERED.**

Dated:     New York, New York
           August 18, 2021

_Loretta A. Preska_____
LORETTA A. PRESKA
Senior United States District Judge

28