UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MATTEL, INC.,

                    Plaintiff,

-against-

ANIMEFUN STORE, BINGO1993,
BINGOES HOT TOY FACTORY, MILIY
STORE, and Q374428329,

                    Defendants.

---

No. 18-CV-8824 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    By opinion and order dated February 26, 2021, the Court
granted summary judgment against Defendants AnimeFun Store, Bingo
1993, Bingoes Hot Toy Factory, Miliy Store, and Q374428329,
(the "Wang Defendants"), finding them liable for trademark
infringement, false designation of origin, and unfair competition
under state common law. (See Summ. J. Mem. & Order ("SJ Order"),
dated Feb. 26, 2021 [dkt. no. 106].)  Before the Court could
determine the appropriate remedies, the U.S. Supreme Court decided
Abitron Austria GmbH v. Hetronic Int'l, Inc., 600 U.S. 412 (2023),
which implicated two provisions at issue in this litigation.
Accordingly, on October 12, 2023, the Court ordered the parties to
submit further briefing regarding the applicability and impact, if
any, of Abitron on the resolution of the remaining issues in this
case. (See dkt. no. 124.)

Plaintiff filed a brief on November 16, 2023. (See Mem. in Resp. to Oct. 12, 2023 Order ("Pl.'s Br."), dated Nov. 16, 2023 [dkt. no. 128].) The Wang Defendants did not respond. The matter is sub judice, and the Court now considers the appropriate remedies and applicability of Abitron on this case.

## I.   Background

### A.   Facts

Mattel is a well-known designer, developer, marketer, manufacturer, and distributor of products sold under well-known brand names, including Barbie, Hot Wheels, American Girl, and Fisher-Price. (See Pl.'s Local Rule 56.1 Statement ("Pl.'s 56.1"), dated July 3, 2020 [dkt. no. 89] ¶ 25; Decl. of Ray Adler in Supp. of Pl.'s Appl. for TRO ("Adler Decl."), dated Sept. 21, 2018 [dkt. no. 23] ¶ 3.) Plaintiff sells its products worldwide through major retailers, toy stores, and online marketplaces. (Pl.'s 56.1 ¶ 26; Adler Decl. ¶ 4.)

One of Mattel's most popular and successful products is UNO. (Pl.'s 56.1 ¶ 27; Adler Decl. ¶ 5.) UNO is a card game wherein players begin with seven cards and, through each turn, attempt to match a card in their hands with a card on the deck or be forced to draw an additional card. (Pl.'s 56.1 ¶ 28; Adler Decl. ¶ 5.) Players attempt to be the first to discard all of their cards successfully. (Pl.'s 56.1 ¶ 28; Adler Decl. ¶ 5.) When a player has a single card remaining, he or she must announce "Uno!" to the

other players, providing a warning that the game is nearly complete or the player risks a penalty.  (Pl.'s 56.1 ¶ 28; Adler Decl. ¶ 5.)

Mattel has filed for and obtained federal trademark registrations for UNO.  (Pl.'s 56.1 ¶ 30; Decl. of Ray Adler in Supp. of Pl.'s Mot. for Summ. J. ("Adler Decl. II"), dated July 30, 2020 [dkt. no. 90] ¶ 9.)  Mattel is the owner of the UNO Registrations covering the UNO marks, including U.S. Trademark Registration Nos. 1,005,397 for "UNO" for goods in Class 28 and 5,125,593 for the wordmark "UNO" in Class 9.  (Pl.'s 56.1 ¶ 31; Adler Decl. II ¶ 10, Ex. A.)  Plaintiff has spent substantial time, money, and effort to develop consumer recognition, awareness, and goodwill in its UNO products and UNO marks.  (Pl.'s 56.1 ¶ 35; Adler Decl. II ¶ 13.)  The record is silent as to whether Plaintiff has trademark registrations for UNO outside of the United States.

Mattel has endeavored to protect its interest in the UNO products, UNO marks, and UNO works.  The success of the UNO products is due in part to Mattel's marketing and promotional efforts, in addition to its use of high-quality materials and processes.  (Adler Decl. ¶ 15.)  Mattel's quality of products and consumers' word-of-mouth praise have made the UNO marks – and UNO products – popular in the public and accordingly afforded Mattel a valuable reputation.  (Compl., dated Sept. 26, 2018 [dkt. no. 15] ¶ 75.)

As of September 2018, about 90% of Mattel's single basic UNO products available to consumers in the United States were manufactured in the United States, while the remaining 10% were manufactured and sold by a single vendor directly to retailers. (Pl.'s 56.1 ¶ 38; Adler Decl. II ¶ 16.)  No one other than Plaintiff and its authorized licensees and distributors is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the UNO marks without the express permission of Plaintiff.  (Pl.'s 56.1 ¶ 42.)  The Wang Defendants are not, and have never been, authorized by Mattel or Mattel's licensees to sell UNO products or to use the UNO marks.  (Adler Decl. II ¶ 20.)

The Wang Defendants are individuals or businesses located in China that conduct business in the United States and other countries through online storefronts on AliExpress.com or DHgate.com.  (See Pl.'s 56.1 ¶ 2; see also Decl. of Wenbin Jin ("Jin Decl."), dated Apr. 1, 2019 [dkt. no. 51-1]; Decl. of Minghui Lai ("Lai Decl."), dated Apr. 1, 2019 [dkt. no. 51-3]; Decl. of Xiaoyan Shi ("Shi Decl."), dated Apr. 1, 2019 [dkt. no. 51-5]; Decl. of Xiaogang Wang ("Wang Decl."), dated Apr. 1, 2019 [dkt. no. 51-7].)  Defendant AnimeFun Store, operated by Minghui Lai, is a merchant on Aliexpress.com with a principal place of business located in Guangdong, China.  (Pl.'s 56.1 ¶¶ 3-4.)  Defendant Bingo 1993, operated by Xiogang Wang, is a merchant on DHgate.com with a principal place of business located in Zhejiang, China.

(Id. ¶¶ 8, 10.)  Defendant Q374428329, also operated by Xiogang Wang, is a merchant on DHgate.com with a principal place of business located in Zhejiang, China.  (Id. ¶¶ 9-10.)  Defendant Bingoes Hot Toy Factory, operated by Wenbin Jin, is a merchant on Aliexpress.com with a principal place of business located in China. (Id. ¶¶ 15-16.)  Defendant Miliy Store, operated by Xiaoyan Shi, is a merchant on Aliexpress.com with a principal place of business located in China.  (Id. ¶¶ 20-21.)

The Wang Defendants purchased these products from suppliers in China.  (Id. ¶¶ 6, 13, 18, 23.)  None of the Wang Defendants' operators could tell the difference between the UNO products he or she purchased from vendors in China and the legitimate UNO products offered for sale or sold by Plaintiff.  (Id. ¶¶ 7, 14, 19, 24; see also Jin Decl. ¶ 23; Lai Decl. ¶ 24; Shi Decl. ¶ 24; Wang Decl. ¶ 23.)

As such, Mattel retained NAL, a company that provides intellectual property infringement research services, to investigate parties offering for sale or selling products that could infringe on the UNO marks.  (Compl. ¶ 85.)  NAL identified that the Wang Defendants were selling or offering for sale counterfeit products through the merchant storefronts and use accounts and that such products used the UNO marks or featured or displayed one or more of the UNO works.  (Decl. of Jessica Arnaiz in Supp. of Pl.'s Appl. for TRO ("Arnaiz Decl."), dated Sept. 21,

2018 [dkt. no. 22] ¶¶ 6-7.)  Such counterfeit products were virtually identical copies of the UNO marks or UNO works.  (Id. ¶ 7.)  NAL contacted the Wang Defendants through their respective merchant storefronts on the online marketplace platforms AliExpress.com and DHgate.com,  expressed interest in placing a bulk order of counterfeit products, and confirmed that each Wang Defendant sold products to customers in the United States. (Pl.'s 56.1 ¶¶ 49-50; see also Arnaiz Decl. ¶ 8.)

Through visual inspection of the Wang Defendants' infringing listings, Plaintiff and its counsel confirmed that each of the Wang Defendants was using the UNO marks without authorization and that the products that each of the Wang Defendants was offering for sale using virtually identical copies of the UNO marks were, in fact, counterfeit products.  (Pl.'s 56.1 ¶ 58; see also Decl. of Spencer Wolgang in Supp. of Pl.'s Appl. for TRO, dated Sept. 26, 2018 [dkt. no. 24] ¶¶ 18-19, Ex. A.)  Plaintiff's inspection of the infringing listings for UNO-related products revealed these UNO-marked products had below-market pricing, improper or no packaging, incorrect labeling, and wrong coloring.  (Pl.'s 56.1 ¶ 62; Adler Decl. ¶ 27.)

Mattel has a single third-party vendor source in China.[1] (Pl.'s 56.1 ¶ 61; Adler Decl. II ¶ 18.)  Mattel has confirmed that all of the Wang Defendants are not, nor have they ever been, authorized distributors or licensees of the UNO products.  (Pl.'s 56.1 ¶ 59; Adler Decl. II ¶ 20.)  Nor are the suppliers identified on the Wang Defendants' invoices authorized or licensed by Mattel to manufacture and/or sell UNO products.  (Adler Decl. II ¶ 19.)  Neither has Mattel consented to the Wang Defendants' use of the UNO marks nor consented to their use of any identical or confusingly similar marks.  (Pl.'s 56.1 ¶ 60; Adler Decl. ¶ 26.)

Defendant AnimeFun Store engaged in 205 transactions of the counterfeit products, including four involving consumers in New York.  (See Joint Proposed Findings of Fact & Conclusions of Law ("FOF/COL"), dated May 26, 2021 [dkt. no. 116] ¶¶ 15-17.)  Defendant Bingo 1993 engaged in one transaction of the counterfeit product, which was to Belarus.  (Id. ¶¶ 20-23.)  Defendant Bingoes Hot Toy Factory engaged in 1,760 transactions of the counterfeit product, including two involving consumers in New York.  (Id. ¶¶ 26-28.)  Defendant Miliy Store engaged in 15 transactions of the counterfeit product, including one involving a consumer in New

---

[1] Although Plaintiff asserts that this supplier "has confirmed that none of the suppliers that issued invoices to the Wang Defendants are associated with said vendor[,]" (Pl.'s 56.1 ¶ 61), this statement is hearsay and thus cannot be relied upon for the instant motion.  See Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009).

York.   (Id. ¶¶ 31-33.)   Defendant Q374428329 engaged in eight transactions of the counterfeit products, which were sold to consumers in Europe.   (Id. ¶¶ 36-39.)   The Wang Defendants have not provided Plaintiff with documents and/or information to evidence their profits from selling the counterfeit products.   (Id. ¶ 44.)

### B.   **Procedural History**

Mattel initiated this action against the Wang Defendants and numerous other online merchants, asserting claims for (1) trademark counterfeiting and infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b); (2) false designation of origin, passing off, and unfair competition in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a); (3) copyright infringement in violation of 17 U.S.C. § 501(a); and (4) state and common law claims, including (i) deceptive acts in violation of N.Y. Gen. Bus. Law § 349; (ii) false advertising in violation of N.Y. Gen. Bus. Law § 350; (iii) unfair competition; and (iv) unjust enrichment. (Compl. ¶¶ 103-62.)

Upon Plaintiff's application, the Court issued a temporary restraining order. (See TRO, dated Oct. 19, 2018 [dkt. no. 11].) After Defendants failed to appear at a show-cause hearing on October 18, 2018, the Court entered a preliminary injunction against Defendants. (See Prelim. Inj. Order ("PI Order"), dated Oct. 18, 2018 [dkt. no. 9].)   The Wang Defendants answered the

Complaint and thereafter filed an Amended Answer. (See Am. Answer ("Ans."), dated Apr. 1, 2019 [dkt. no. 48].)  The Court denied the Wang Defendants' subsequent motion to dismiss for lack of personal jurisdiction and insufficient service of process.  See Mattel, Inc. v. AnimeFun Store, No. 18 Civ. 8824 (LAP), 2020 WL 2097624, at *6 (S.D.N.Y. May 1, 2020).

In July 2020, Plaintiff moved for summary judgment against the Wang Defendants.  (See dkt. no. 87.)  The Court granted Plaintiff's motion as to the Wang Defendants' liability for (1) trademark counterfeiting and infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b); (2) false designation of origin, passing off, and unfair competition in violation of Lanham Act, 15 U.S.C. § 1125(a); and (3) unfair competition under state common law. (See SJ Order at 24-25.)  The Court denied Plaintiff's motion as to its claims for (1) deceptive acts in violation of N.Y. Gen. Bus. Law § 349; (2) false advertising in violation of N.Y. Gen. Bus. Law § 350; and (3) unjust enrichment in violation of state common law. (See id. at 25.)

The parties appeared for oral argument on May 4, 2021. (See Oral Argument on Damages Transcript ("Oral Arg. Tr."), dated May 4, 2021 [not publicly filed].)  At oral argument, counsel for the Wang Defendants argued that Plaintiff's claims against Defendants Bingo 1993 and Q374428329 for sales outside of the United States constitute an impermissible, extraterritorial application of the

Lanham Act.  (Id. 3:21-7:3, 19:14-23.)  On May 26, 2021, the parties submitted proposed Joint Findings of Fact and Conclusions of Law, which included a section on extraterritoriality under the Lanham Act.  (See FOF/COL ¶¶ 48-51.)

On June 29, 2023, the Supreme Court decided Abitron, determining that two of the provisions of the Lanham Act, both of which are implicated in this litigation, were "not extraterritorial and . . . extend only to claims where the claimed infringing use in commerce is domestic." Id. at 415.  In response, the Court ordered the parties to submit supplemental briefing on the applicability and impact of Abitron on the remaining issues in this case.  (See dkt. no. 124.)  Plaintiff filed its submission on November 16, 2023.  (See generally Pl.'s Br.)  The Wang Defendants did not respond.

On March 1, 2024, the Court ordered a status update on the Abitron issue and any outstanding issues.  (See dkt. no. 133.) On March 6, 2024, Plaintiff informed the Court, via letter, of its efforts to contact counsel for the Wang Defendants and requested that the Court consider the matter sub judice.  (See dkt. no. 134.) Again, counsel for the Wang Defendants did not respond.

## II.  **Discussion**

Because Plaintiff has established the Wang Defendants' liability on claims for (1) trademark counterfeiting and infringement under the Lanham Act, (2) false designation of origin,

passing off, and unfair competition under the Lanham Act, and
(3) unfair competition under state common law, the Court turns now
to the remaining issues of extraterritoriality and remedies.

Plaintiff seeks statutory damages for willful infringement.
(Oral Arg. Tr. 9:4-10.)   For the 205 transactions engaged by
Defendant AnimeFun Store, Plaintiff requests $125,000.   (Id.
10:13-14.)   For the one counterfeit product sold by Defendant
Bingo 1993, Plaintiff requests $25,000.  (Id. 10:15-16.)  For the
1,760 counterfeit products sold by Defendant Bingoes Hot Toy
Factory, Plaintiff requests $200,000.  (Id. 10:16-17.)  For the
15 counterfeit products sold by Defendant Miliy Store, Plaintiff
requests $50,000.   (Id. 10:18-19.)   Finally, for the eight
counterfeit products sold by Defendant Q374428329, Plaintiff
requests $25,000.  (Id. 10:19-21.)

Plaintiff also requests injunctive relief, attorney's fees,
and postjudgment interest.  (Id. 8:20-23.)

A.    **The Wang Defendants Are Liable Under the Lanham Act**

On May 4, 2021, the parties presented oral arguments regarding
the applicability of the Lanham Act to sales outside of the United
States.  (See id. 3:21-4:2, 5:22-6:8.)  Defendants Bingo 1993 and
Q374428329 argued that the Lanham Act does not apply
extraterritorially to sales from China to non-U.S. countries and,
as such, Plaintiff's Lanham Act claims must fail against them.
(See id. 5:25-7:3.)  As discussed supra, before the Court could

consider the parties' arguments, the Supreme Court decided
<u>Abitron</u>. As such, the Court considers whether <u>Abitron</u> affects
Plaintiff's claims against all of the Wang Defendants, not only
Defendants Bingo 1993 and Q374428329.

<u>Abitron</u> does not impact the outcome of Plaintiff's claims
under the Lanham Act. In determining that § 1114(1)(a) and
§ 1125(a)(1) are not extraterritorial, the Supreme Court set out
a two-step framework for applying the presumption against
extraterritoriality. First, courts must "determine whether a
provision is extraterritorial, and that determination turns on
whether Congress has affirmatively and unmistakably instructed
that the provision at issue should apply to foreign conduct."
<u>Abitron</u>, 600 U.S. at 417-18 (citation and internal quotation marks
omitted). If the provision is not extraterritorial, courts proceed
to the second step to determine whether the action "seeks a
(permissible) domestic or (impermissible) foreign application of
the [Lanham Act]." <u>Id.</u> at 418. With respect to § 1114(1)(a) and
§ 1125(a)(1), a party's infringing "use in commerce" of a trademark
demarcates the boundary between foreign (impermissible) and
domestic (permissible) applications of the provisions. <u>See</u> <u>id.</u>
at 423. Put another way, whether the application of these
provisions is permissible turns on whether the infringing "use in
commerce" occurred in the United States.

Because § 1114(1)(a) and § 1125(a)(1) are not extraterritorial, the relevant inquiry is whether the Wang Defendants' infringing use of Plaintiff's trademark was "in commerce." The Lanham Act defines "use in commerce" as use "in the ordinary course of trade" where the mark serves to "identify and distinguish [the mark user's] goods . . . and to indicate the source of the goods." 15 U.S.C. § 1127. This definition includes an "offering for sale, distribution, or advertising of any goods or services . . . ." Id. § 1114(1)(a). Moreover, "use in commerce" is not limited to the place the mark is first affixed or where the item is sold; rather, "it can occur wherever the mark serves its source-identifying function." Abitron, 600 U.S. at 430 (Jackson, J., concurring).

Here, each of the Wang Defendants' uses was "in commerce" and are therefore subject to the Lanham Act. Defendants AnimeFun Store, Bingoes Hot Toy Factory, and Miliy Store each sold counterfeit products to consumers in the United States. (See FOF/COL ¶¶ 17, 28, 33, 38.) These transactions clearly meet the definition of "use in commerce" within the United States.

The same conclusion applies to Defendants Bingo 1993 and Q374428329. Although these two Defendants did not sell counterfeit products in the United States' territory, their actions constitute "use in commerce" because they advertised, marketed, promoted, and offered counterfeit products to domestic consumers. (See Pl.'s

Br. at 4.)  They utilized an online marketplace, DHgate.com, to advertise products  to consumers in the United States by listing the products in U.S. dollars and offering shipping to the United States.  (Id. at 5-7.)  Because offering a product domestically, regardless of whether a sale occurred, qualifies as "use in commerce," such acts permissibly fall under the Lanham Act.  See Abitron, 600 U.S. at 432 n.2 (Jackson, J. concurring) ("[I]n the internet age, one could imagine a mark serving its critical source-identifying function in domestic commerce even absent the domestic physical presence of the items whose source it identifies.").

Because the Wang Defendants used Plaintiff's UNO marks "in commerce" in the United States, the Lanham Act applies, and the Court's determinations on summary judgment are unchanged.

**B.    The    Wang    Defendants    Willfully    Infringed    and Counterfeited Plaintiff's Trademarked Products**

Next, the Court assesses whether the Wang Defendants willfully infringed and counterfeited Plaintiff's trademarked products, such that Plaintiff is eligible for statutory damages. To support a finding of willfulness in a Lanham Act action, a plaintiff must show "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard . . . or willful blindness." 4 Pillar Dynasty LLC v. N.Y. & Co., Inc., 933 F.3d 202, 210 (2d

Cir. 2019) (quoting Island Software & Comput. Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005)); see also Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc., 507 F. App'x 26, 31 (2d Cir. 2013) (summary order) (applying Copyright Act definition to Lanham Act claim).

The standard for willfulness is "whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993); see also Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1115 (2d Cir. 1986). Willfulness may be apparent from the similarity between the products sold and the genuine products. See Coach, Inc. v. O'Brien, No. 10 Civ. 6071 (JPO)(JLC), 2011 WL 6122265, at *5 (S.D.N.Y. Nov. 28, 2011); see also Coach, Inc. v. Melendez, No. 10 Civ. 6178(BSJ)(HBP), 2011 WL 4542971, at *8 (S.D.N.Y. Sept. 2, 2011) ("Because the marks used by defendants on their products are virtually identical . . . the conclusion is inescapable that defendants' infringement and counterfeiting is intentional.").

Here, the counterfeit products bearing the UNO mark were so identical to Plaintiff's UNO products that the Wang Defendants admitted that they cannot tell the difference between the UNO products they purchased from vendors in China and the UNO products offered for sale or sold by Plaintiff. (Pl.'s 56.1 ¶¶ 7, 14, 19,

24; <u>see also</u> Jin Decl. ¶ 23; Lai Decl. ¶ 24; Shi Decl. ¶ 24; Wang Decl. ¶ 23.)  Furthermore, the Wang Defendants were not authorized by Mattel or its licensees to sell products with the UNO mark. (<u>See</u> FOF/COL ¶¶ 19, 25, 30, 35, 41.)

Therefore, it is apparent that the Wang Defendants willfully infringed and counterfeited Plaintiff's trademarked products.

### C. Plaintiff Is Entitled to Statutory Damages under the Lanham Act

In actions involving the use of counterfeit marks, the Lanham Act permits the plaintiff to elect to recover an award of statutory damages, rather than actual damages and profits.  <u>See</u> 15 U.S.C. § 1117(c).  Congress recognized that "counterfeiters['] records are nonexistent, inadequate, or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible." <u>Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.</u>, No. 03 CV 2132 GB D KNF., 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006) (quoting <u>Polo Ralph Lauren, L.P. v. 3M Trading Co.</u>, No. 97 Civ. 4824(JSM)(MH), 1999 WL 33740332, at *4 (S.D.N.Y. Apr. 19, 1999)).  The Lanham Act provides that a plaintiff may recover statutory damages "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(1).  However, if the

defendant used the counterfeit mark willfully, the range of statutory damages is increased to $1,000-$2,000,000, and courts have broad discretion in determining the damages awarded in a particular case and may balance the punitive and deterrent function of the statutory damages with the aim of not providing a windfall to prevailing plaintiffs.  See 15 U.S.C. § 1117(c)(2); Louis Vuitton Malletier S.A. v. LY USA, Inc., 472 F. App'x 19, 22 (2d Cir. 2012) (summary order).

Because the statute does not provide guidelines, courts within this Circuit look to copyright law for a multifactor test that examines (1) the infringer's profits reaped and expenses saved; (2) the plaintiff's revenues lost; (3) the mark's value; (4) the need to deter potential infringers; (5) the degree of willfulness or innocence of the defendant; (6) the defendant's cooperativeness in providing information relevant to proof of profits and losses; and (7) the need to deter the defendant from future misconduct.  Spin Master Ltd. v. Alan Yuan's Store, 325 F. Supp. 3d 413, 425-26, 425 n.4 (S.D.N.Y. 2018).

Here, as discussed above, the Wang Defendants have willfully infringed Plaintiff's registered marks.  Accordingly, the Court finds Plaintiff's requested rewards to be reasonable.  Plaintiff is awarded $125,000 from Defendant AnimeFun Store, $25,000 from Defendant Bingo 1993, $200,000 from Defendant Hot Toy Factory, $50,000 from Defendant Miliy Store, and $25,000 from Defendant

Q374428329 for a total of $425,000 pursuant to 15 U.S.C. § 1117(c) of the Lanham Act.

### D.   **Plaintiff Is Entitled to Injunctive Relief**

Moreover, the Court may grant injunctive relief to prevent further trademark and copyright violations pursuant to 15 U.S.C. § 1116 where, as here, the plaintiff has demonstrated (1) that it suffered irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the injunction would not disserve the public interest.  eBay Inc. v. Mere Exchange, LLC, 547 U.S. 388, 391 (2006); see U.S. Polo Ass'n v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011) (extending the eBay standard to trademark infringement actions).  "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction[.]" 15 U.S.C. § 1116(a).

All aforementioned factors favor issuance of a permanent injunction.  "Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable." U.S. Polo Ass'n, 800 F. Supp. 2d at 540 (citation and internal

quotation marks omitted).  Plaintiff has acquired goodwill and a valuable reputation, which the counterfeit products threaten to exploit.  (Adler Decl. ¶¶ 20, 22.)

Although AliExpress.com and DHgate.com have complied with the TRO and PI Order by freezing the accounts and merchant storefronts, the Wang Defendants may resume their infringing conduct following the removal of such restraints.  The Wang Defendants have made no assurances that violations would end.  Consequently, the risk of this continued activity satisfies the second element — that there be no adequate remedy at law — when the "[d]efendant is likely to continue infringing" on plaintiff's intellectual property rights. Warner Bros. Ent. Inc. v. RDR Books, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008).

The balance of hardships favors Plaintiff because "it is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product."  See WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 287 (2d Cir. 2012) (citation omitted). Plaintiff has alleged, and is entitled to, the rebuttable presumption of irreparable harm, as the Wang Defendants have been found to be in violation of § 1114(1)(a)-(b) of the Lanham Act. (See SJ Order at 16-20.)

Finally, the injunction clearly will not disserve the public, as it will ensure the continued removal of the Wang Defendants' infringing products.  Because "the public has an

interest in not being deceived — in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality[,]" a permanent injunction is in the public's interest. <u>N.Y.C. Triathlon, LLC v. Triathlon Club, Inc.</u>, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). Accordingly, the Wang Defendants are permanently enjoined from engaging in the infringing conduct described in the Court's preliminary injunction order, (<u>see</u> PI Order at 3-5), pursuant to 15 U.S.C. § 1116.

### E.    **Plaintiff Is Not Entitled to Attorney's Fees under the Lanham Act**

Under 15 U.S.C. § 1117(a), a court may award "reasonable attorney fees" to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). The Court of Appeals revisited the definition of "exceptional cases" in light of <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 572 U.S. 545 (2014). <u>See</u> <u>4 Pillar Dynasty LLC</u>, 933 F.3d at 215-16. In <u>Octane Fitness</u>, the Supreme Court interpreted an identical attorney's fee provision found in the Patent Act, where the Supreme Court defined an "exceptional case" as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." <u>See</u> 572 U.S. at 554. The Supreme Court allotted district courts wide latitude to engage in a "case-by-case exercise of their discretion, considering the

totality of the circumstances . . . [which include factors like] frivolousness, motivation, objective unreasonableness[,] . . . and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 554 & n.6 (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)). "Because Octane Fitness establishes no presumption — rebuttable or otherwise — that cases involving willful infringement are necessarily 'exceptional,'" this Court must consider the totality of the circumstances. 4 Pillar Dynasty LLC, 933 F.3d at 216.

Here, the record does not indicate that the case was litigated in an "unreasonable manner," and there was no indication that the litigation was "both objectively baseless and brought in subjective bad faith." Octane Fitness, 572 U.S. at 545-46. Looking to the totality of the circumstances, although the Wang Defendants willfully infringed, there is no evidence in the record to support that this was an "exceptional case" under the Octane Fitness test. Accordingly, Plaintiff's request for attorney's fees is denied.

### F.    **Plaintiff Is Entitled to Postjudgment Interest**

Postjudgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court[,]" 28 U.S.C. § 1961(a), and shall be calculated pursuant to the statutory rate. See Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd., 888 F.2d 260, 268-70 (2d Cir. 1989).

Plaintiff is therefore allowed postjudgment interest according to the federal market rate, per its request at oral argument. (<u>See</u> Oral Arg. Tr. 12:4-10.)

### III. <u>Conclusion</u>

For the foregoing reasons, the Court grants Plaintiff's requests for remedies as to statutory damages totaling $425,000, postjudgment interest to be calculated at the federal market rate, and injunctive relief. The Court denies Plaintiff's request for attorney's fees.

Plaintiff shall submit a revised proposed judgment, consistent with this Order, no later than November 15, 2024.

**SO ORDERED.**

Dated:    October 30, 2024
          New York, New York

_Loretta A. Preska_
_____
LORETTA A. PRESKA
Senior United States District Judge